CITY OF RACINE, a municipal corporation, Petitioner-Respondent,

v.

Gerald BASSINGER and Judith Bassinger, Respondents-Appellants.†

Court of Appeals

*No. 90-2763. Submitted on briefs May 14, 1991.—Decided July 10, 1991.*

(Also reported in 473 N.W.2d 526.)

†Petition to review denied.

On behalf of the respondents-appellants, the cause was submitted on the briefs of *Debra A. Slater* of *Weiss, Berzowski, Brady & Donahue* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Daniel P. Wright,* deputy city attorney.

Before Nettesheim, P.J., Brown and Scott, JJ.

SCOTT, J. In this eminent domain case, Gerald and Judith Bassinger appeal from a judgment[1] granting to the City of Racine a writ of assistance. The Bas-

---

[1]Although the Notice of Appeal states that the appeal is taken from the trial court's October 25, 1990 Memorandum Decision and Order, we note that the closing language of that order contemplates that a subsequent document would issue. One in fact did: a judgment granting the writ was issued on November

singers contend that the trial court erred in issuing the writ because the city failed to meet certain jurisdictional prerequisites and because the statute unambiguously entitles them to comparable replacement property for their marina. We disagree and affirm the trial court.

On August 15, 1990, the city filed a petition for a writ of assistance pursuant to sec. 32.05(8), Stats., to gain possession of property once owned by the Bassingers. The petition alleged that although the Bassingers deeded the property to the city in December 1989, they refused to vacate the site.

The facts leading up to the application for the writ must be recited in some detail. In August 1985, the city's common council authorized an agreement between the city and the Wisconsin Department of Transportation (DOT) to replace a bridge. Nearly three years later, in May 1988, the council approved a relocation order indicating that the Bassinger property would be needed for the bridge project. The Bassingers operated two businesses on the property—a construction business and a marina business.

The city conducted an investigation to determine whether it was required to prepare and file a relocation plan with the Department of Industry, Labor & Human Relations (DILHR). *See* sec. 32.25(1), Stats. Determining that the construction yard was not in use and that the marina was a rental business, the city concluded that neither business constituted a "displaced business" and that no relocation plan was thus necessary.

In January 1989, the Bassingers were given pamphlets describing their rights under the condemnation law provisions of ch. 32, Stats. They were given no pamphlets describing their rights under the relocation assis-

12, 1990. We construe the appeal to be taken from that final document.

tance law provisions of that chapter, however. Two months later, the city gave the Bassingers an appraisal of the property, a written offer to purchase, and additional pamphlets regarding their rights under the eminent domain provisions of ch. 32. As before, the city provided the Bassingers with no information regarding relocation assistance.

DOT viewed the Bassingers' property in July 1989. This time it was determined that the construction business portion of it was an owner-occupied business entitled to relocation assistance. The city thus had to prepare a relocation plan for the construction business, a plan subject to DILHR approval. DOT agreed with the city's earlier conclusion that the marina was a rental property and not an owner-occupied business entitled to relocation assistance.

Meanwhile, the parties were negotiating the transfer of the property from the Bassingers to the city. The Bassingers advised DOT by letter that they would accept the city's offer to purchase. The letter also stated that they were reserving any rights they had under ch. 32, Stats., and specifically their right to appeal the condemnation award. After a reappraisal of the property, the parties closed the sale of the property on December 22, 1989.[2]

On January 18, 1990, the city submitted the relocation plan to DOT and asked that the plan be forwarded to DILHR. DILHR responded by letter dated March 2, 1990, stating:

---

[2]The reappraisal established a higher value for the property than that in the March 1989 appraisal, and the city offered the higher sum. The Bassingers accepted, this time without expressing any reservation regarding the amount of the award or the other conditions set forth in their acceptance of the first offer.

Wisconsin Statutes, Section 32.25(1), requires that a public agency file and obtain approval of a relocation plan <u>before</u> property acquisition activities are begun. Since acquisition activities have occurred on this project, your plan cannot be approved. However, review of the plan indicates substantive compliance with the intent of the relocation law, and you may proceed with activities. [Emphasis in original.]

On March 16, 1990, DILHR gave the city its written authorization for the relocation plan and on March 21 the city began to implement the plan. At that time, the city wrote to the Bassingers to explain their relocation benefits and forwarded to them a pamphlet on the subject. By letter dated March 22, 1990, the city ordered the Bassingers to vacate the property. They refused. They claimed they could not be required to vacate because the city had not complied with all of the jurisdictional prerequisites and had failed to make available to them comparable replacement property for the marina. The city then sought a writ of assistance from the circuit court. The writ was issued on November 12, 1990. The Bassingers appeal.[3]

■

Resolution of both appellate issues—whether the city complied with all jurisdictional prerequisites and whether the city must make available a comparable replacement property—requires that we construe sec. 32.05(8), Stats. Statutory construction is a question of law which we review without deference to the trial court. *Town of Sheboygan v. City of Sheboygan,* 150 Wis. 2d 210, 212, 441 N.W.2d 752, 753 (Ct. App. 1989).

---

[3]The Bassingers do not contend on appeal that the city did not make available to them comparable replacement property for the construction business portion of the property.

Section 32.05(8), Stats., governing writs of assistance in eminent domain actions, provides in part:

> The condemnor has the right to possession when the persons who occupied the acquired property . . . hold over beyond the vacation date established by the condemnor . . . except that the condemnor may not require the persons who occupied the premises on the date title vested in the condemnor to vacate until a comparable replacement property is made available. If the condemnor is denied the right of possession, the condemnor may, upon 48 hours' notice to the occupant, apply to the circuit court where the property is located for a writ of assistance to be put in possession. *The circuit court shall grant the writ of assistance if all jurisdictional requirements have been complied with, if the award has been paid or tendered as required and if the condemnor has made a comparable replacement property available to the occupants.* [Emphasis added.]

■
Thus, there are three conditions precedent to the issuance of a writ of assistance: (1) compliance with all jurisdictional requirements; (2) payment or tender of the award; and (3) making available comparable replacement property to the occupants. *Id.* The Bassingers contend that the first and third conditions were not met.

### 1. Jurisdictional Requirements

■
We first address whether the city satisfied all the jurisdictional requirements. The Bassingers contend the city did not because it failed to comply with three procedural steps: (1) a relocation plan was not filed and approved by DILHR under sec. 32.25(1), Stats., before procedures were begun to acquire the property; (2)

1035

although during the negotiation phase the city provided information describing the eminent domain provisions of ch. 32, Stats., it did not provide pamphlets describing the relocation assistance provisions until March 21, 1990; and (3) the city did not comply with Wis. Adm. Code sec. ILHR 202.06(2) which requires that certain written notices be provided at the time of initial contact to obtain information necessary for preparation of a relocation plan. As the trial court noted, a threshold question is whether these procedural steps are, in fact, jurisdictional requirements.[4] We conclude they are not.

The trial court correctly stated that some of the procedural steps in ch. 32, Stats., are recognized as constituting such a valuable right of the property owner that they are deemed by the statute itself or by case law to be jurisdictional in nature. The court also correctly observed that not all procedural steps associated with the condemnation proceedings are considered jurisdictional requirements. *See Herro v. Natural Resources Bd.*, 53 Wis. 2d 157, 176, 192 N.W.2d 104, 114 (1971). The trial court then noted:

> The procedural steps which [in other cases[5]] have been found to be jurisdictional in condemnation proceedings all have two significant features in common. *The first* is that they are contained within the particular statute which sets forth the condemnation pro-

[4]In this opinion, we refer frequently and confidently to the trial court's memorandum decision. We commend Judge Marik on a soundly reasoned and cogently written opinion.

[5]*See, e.g., Arrowhead Farms, Inc. v. Dodge County*, 21 Wis. 2d 647, 652, 124 N.W.2d 631, 634 (1963) (holding that negotiation with the property owner under sec. 32.05(2a), Stats., is jurisdictional); *Toombs v. Washburn County*, 119 Wis. 2d 346, 347, 350 N.W.2d 720, 721 (Ct. App. 1984) (holding that adoption of a relocation order under sec. 32.05(1) is jurisdictional).

cedure, that is, the things which must be done to have and to exercise the power to acquire property by eminent domain in each particular case. *The second* is that the statute expressly or impliedly denies the power of the condemnor to act unless the particular step is taken, and no other statutory remedy is provided for a failure to perform the particular step. The only remedy which exists is to challenge the condemnation itself under Sec. 32.05(5) or 32.06(5), Wis. Stats. If the property owner prevails, the result is a voiding of the acquisition of the property. [Emphasis added.]

We agree with the trial court's conclusion that none of the three procedural steps the Bassingers claim are jurisdictional shares either of these characteristics. As to the first characteristic—that the procedural steps must be contained in the governing statute—none of the three procedural steps is contained in the condemnation statutes, secs. 32.04 through 32.185, Stats. Rather, they are contained in or authorized by the relocation assistance statutes, secs. 32.19 through 32.27, Stats.[6]

The statutes governing condemnation action procedures are in derogation of the common law and therefore are to be strictly construed. *Herro,* 53 Wis. 2d at 171, 192 N.W.2d at 111. Accordingly, strict adherence to the statute is required. Likewise, engrafting onto the statute

[6]Although related and sometimes overlapping, the condemnation and relocation assistance provisions are separate and have different applications. Because condemnations do not necessarily involve the displacement of persons, businesses or farm operations, in some instances the relocation assistance law does not apply. Conversely, where the government acquires property through means other than condemnation, the relocation assistance law may still apply. *See* 68 Op. Att'y Gen. 3 (1979); 63 Op. Att'y Gen. 201 (1974).

things it does not require is forbidden. We agree with the trial court that the procedural steps for which the Bassingers argue are neither a part of, nor prescribed by, sec. 32.05, Stats.

As to the second characteristic—denial of the condemnor's power to act—we again quote from the trial court:

> [T]he statute does not either expressly or impliedly deny power to the condemnor to act where the procedural step is not taken. To the contrary, the remedial and enforcement provisions of the relocation assistance law give specific rights to DILHR and to property owners to secure compliance.

The trial court then stated that, significantly, sec. 32.26(3), Stats., clearly recognizes that failure to comply with secs. 32.19 to 32.27, Stats., "does not void the acquisition of the property by the condemnor, as it would if it were a jurisdictional defect. Rather it provides for steps to secure compliance." We agree. Therefore, we conclude that the procedural defects of which the Bassingers complain do not rise to the level of jurisdictional requirements. As a result, the defects do not present a bar to the issuance of the writ.

## 2. Comparable Replacement Property

The second issue is whether the city must make available "comparable replacement property" for the marina business portion of the Bassingers' property. The city did not do so, concluding that the marina was not an owner-occupied business.

One of the conditions to the granting of a writ of assistance is that "the condemnor has made a comparable replacement property available to the occupants."

1038

Section 32.05(8), Stats. The trial court determined that the term "occupants" is ambiguous. We agree.

A statute is ambiguous if reasonable persons could disagree as to its meaning. *St. John Vianney School v. Board of Educ.,* 114 Wis. 2d 140, 150, 336 N.W.2d 387, 391 (Ct. App. 1983). Whether reasonable persons could disagree is a question of law, as is the meaning of an ambiguous statute. *Id.* at 150–51, 336 N.W.2d at 391. We thus determine the meaning of a statute independent of the trial court's decision. *Sturgis v. Town of Neenah Bd. of Canvassers,* 153 Wis. 2d 193, 198, 450 N.W.2d 481, 483 (Ct. App. 1989).

The Bassingers contend that "occupants" means the owners who use—or do not use, for that matter—the property for a particular purpose. The city responds that "occupants" has no single definition, leaving its meaning in any given situation to be determined by reference to other provisions of ch. 32, Stats., such as sec. 32.19, Stats.

We conclude that both of these arguments are reasonable. Consequently, we must discern the legislative intent by looking to the scope, history, context, subject matter and object of the statute. *Sturgis,* 153 Wis. 2d at 198, 450 N.W.2d at 483.

The language in question was created by sec. 877, 1983 Wis. Act 27. The Legislative Reference Bureau (LRB) analysis of the original bill, 1981 S.B. 562, stated in part:

> Current law is unclear and contradictory in regard to the conditions and terms of continued occupancy by displaced persons during the period after acquisition but before displacement. This bill provides that no person may be required to move without at least 90

days' written notice from the condemnor and until a comparable replacement property is made available.

We note that 1981 S.B. 562, the bill creating the language in question, dealt almost exclusively with relocation assistance. Moreover, the LRB analysis refers to occupancy by *displaced persons,* a term specifically defined and used in relocation assistance law, not in condemnation law. We agree with the trial court that the particular choice of the words "displaced persons" is "clearly indicative of an understanding that the persons to whom the new statutory language referred were those also referred to in the relocation assistance law sections of Ch. 32, Wis. Stats."

We conclude that the legislative intent of the language in question was to provide, as one of the three conditions precedent to issuance of a writ of assistance, that a person displaced by a condemnation have comparable replacement property made available *to the extent required by the relocation assistance law.* The LRB analysis reveals that the language in question was added to sec. 32.05, Stats., to *clarify* existing law—not to create in condemnees new substantive rights. By placing the language in subsec. (8), the legislature merely added a new condition, the substantive rights of which are found elsewhere in the statute. Or, as the trial court perhaps more clearly stated:

> [T]he jurisdictional requirements and the payment or tender of the award are [also] conditions which must be satisfied, but the substantive right to each of them is not created in subsection (8), but elsewhere in the statute. Resort must be had to other provisions of the statutes to determine precisely what must be done to satisfy the [new] condition stated in Subsection (8).

1040

The Bassingers' reading of sec. 32.05(8), Stats., would have the effect of creating in condemnees a new substantive right to have comparable replacement property made available to them independent of any other provision or requirement of law. Again we refer with approval to the trial court's reasoning:

> If the legislature had intended to create such a substantial and significant right, it is hard to imagine that it would have done so in such an obtuse way by implying it in such general language added as a condition precedent to issuance of a writ of assistance. This is particularly true in light of the fact that the law already contained separate and very specific provisions dealing with relocation assistance and payments and the legislation in which the new language was contained dealt primarily with those provisions. If the legislature had intended to create such a substantial right as [the Bassingers] contend, the Court is satisfied that it would not have done so by burying it as a condition precedent . . . but that it would have created it as another entitlement in Sec. 32.19, particularly since it was also amending that section by the same legislation.

Accordingly, we conclude that the relocation assistance law, not condemnation law, determines the extent to which the Bassingers are entitled to have made available to them comparable replacement property for the marina. We therefore look to that law to determine whether comparable replacement property for the marina should have been made available. If so—as the Bassingers contend—the writ was wrongly issued.

Section 32.19(4m), Stats., authorizes business replacement payments for a comparable replacement to "any owner displaced person who has owned and occupied the business operation . . . for not less than one

year prior to the initiation of negotiations for the acquisition." The Bassingers argue that they are entitled to such payments because they owned and occupied the marina during that time. We disagree.

The trial court found the following facts regarding the nature of the Bassingers' marina business:

> 1. The primary nature of the marina operation was that slips were rented to boat owners on a long-term basis from April to October;
>
> 2. boat owners were allowed to leave their boat trailers on the premises;
>
> 3. there was no place of business or office on the premises;
>
> 4. the Bassingers did not conduct any commercial activities at the property in connection with the marina operation;
>
> 5. the Bassingers performed no services in connection with the marina operation other than using their forklift to help owners put their boats into the water at the beginning of the season and take them out at the end of the season; and
>
> 6. the Bassingers provided some conveniences for the use of the boat owners, such as a toilet and shower, soda and ice machines, a fish cleaning station, and weekend access to a gas pump.

The trial court then concluded that the Bassingers' activities were much like the activities of a landlord who operates an apartment building:

> Space is rented for occupancy on a long term basis. Renters are allowed to park their boat trailers much like a tenant might be given a storage area. Certain conveniences were provided for the use of the boatowners, much the same as vending machines,

laundry machines and facilities and other items are made available for the use of building tenants. [The Bassingers] and their representatives repaired and maintained the premises when necessary, just as building owners would do.

██

We agree. The marina operation involved the rental of property for boat docking and storage, and the provision of related convenience items. The definition of "displaced person" does not include "[a] person who is a non-occupant owner of commercial . . . property that is rented to others." Wis. Adm. Code sec. **ILHR 202.01(14)(b)10.** The Bassingers did not physically occupy that portion of the property. Owners of rental property who do not physically occupy the real property taken for public use are ineligible for business replacement payments under sec. 32.19(4m), Stats. 69 Op. Att'y Gen. 263, 269 (1980). Because the Bassingers do not have that substantive right under relocation assistance law, the city is not obliged to make available to them a comparable replacement property for the marina operation as a condition precedent to the granting of a writ of assistance under sec. 32.05(8), Stats.

*By the Court.*—Judgment affirmed.