No. 00–CV–3379

Dotty Dumpling's Dowry, Ltd., Plaintiff-Appellant,†

v.

Community Development Authority of the City of Madison, Defendant-Respondent.

No. 01–CV–259

Community Development Authority of the City of Madison, Plaintiff-Respondent,

v.

Dotty Dumpling's Dowry, Ltd., Defendant-Appellant.†

Court of Appeals

*No. 01–1913. Submitted on briefs January 11, 2002.—Decided July 25, 2002.*

2002 WI App 200

(Also reported in 651 N.W.2d 1.)

On behalf of the plaintiff-appellant/defendant-appellant, the cause was submitted on the briefs of *Alan Marcuvitz* and *Andrea Roschke* of *Weiss Berzowski Brady LLP*, Milwaukee.

On behalf of the defendant-respondent/plaintiff-respondent, the cause was submitted on the brief of *Benjamin Southwick*, Richland Center.

Before Vergeront, P.J., Deininger and Lundsten, JJ.

¶ 1. DEININGER, J. Dotty Dumpling's Dowry, Ltd. (Dotty), appeals an order granting the Community Development Authority of the City of Madison a writ of

assistance to remove Dotty from premises which the Authority had condemned. Dotty claims the circuit court erred in granting the writ because "a comparable replacement property" was not "made available" to Dotty, as required by Wis. Stat. § 32.05(8) (1999–2000).[1] We conclude, however, that comparable replacement property was "made available" to Dotty "*to the extent required by the relocation assistance law.*" *City of Racine v. Bassinger*, 163 Wis. 2d 1029, 1040, 473 N.W.2d 526 (Ct. App. 1991). Accordingly, the trial court did not err in granting the writ and we affirm its issuance.

## BACKGROUND

¶ 2. The relevant facts are largely undisputed. Dotty owned and operated a restaurant business on Fairchild Street in downtown Madison since 1991. The sole shareholder of Dotty had operated a restaurant of the same name at two other locations on Madison's near west side since 1975. Dotty owned the Fairchild Street property in which the restaurant was located. The area in question was determined by the Madison City Council to be blighted, and the City's Community Development Authority sought to acquire and raze Dotty's building in order to further the redevelopment of the area by constructing a cultural arts facility. *See* Wis. Stat. § 66.1333.

¶ 3. The Authority initiated condemnation proceedings under Wis. Stat. § 32.05 and acquired title to Dotty's real estate. The Authority's jurisdictional offer to compensate Dotty for the loss of its "land including

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted. The relevant portions of Wis. Stat. § 32.05(8) are quoted in the Analysis section of this opinion, below at ¶ 9.

site improvements and fixtures actually taken" was $583,680. The acquisition of Dotty's and other property required the Authority to comply with statutory relocation assistance provisions. *See* WIS. STAT. § 32.19 *et seq.* Accordingly, the Authority retained a relocation specialist who devised a relocation plan for those displaced by its project. Dotty identified several criteria which a replacement property must meet in order to make it acceptable to Dotty as a comparable replacement for its business property. These were: (1) the property would have to be in the same vicinity as the condemned restaurant property; (2) Dotty must be able to own (not lease) the property; and (3) acquisition of the replacement property would not increase Dotty's existing level of business indebtedness.

¶ 4. The relocation specialist identified several potential replacement properties in the general area, but only one was deemed worthy of further inquiry. The cost to purchase and remodel this property would have been about $1.5 million dollars, almost $1 million more than the Authority made available to Dotty in its condemnation award and proposed relocation assistance payments. Dotty requested that the Authority pay this difference to Dotty so that it could acquire and renovate the property. In the alternative, Dotty asked the Authority to conduct another search and offer it a comparable property which it could acquire at a cost not exceeding the amount it would receive from the Authority. At about this same time, the Authority requested Dotty to vacate the condemned property so that the redevelopment project, which was already or soon to be underway, could proceed.

¶ 5. Asserting that the Authority had not offered "a comparable business replacement in compliance with sec. 32.05(8)," Dotty refused to vacate the property. The

Authority petitioned the circuit court for a writ of assistance to oust Dotty from the property.[2] *See* Wis. Stat. § 32.05(8). The Authority deposited $50,000 with the clerk of circuit court with instructions to release the sum to Dotty if it purchased a "comparable replacement business . . . at a purchase price of at least $633,680" within two years of Dotty either vacating the condemned premises or receiving the condemnation award, whichever occurred later. *See* Wis. Stat. § 32.19(4m)(a). The trial court issued a writ of assistance, concluding that the Authority had complied with the statutory relocation assistance requirements. Dotty appeals.

## ANALYSIS

¶ 6. We first note that this appeal does *not* involve a challenge to the Authority's right of condemnation, or to the adequacy of the damages awarded Dotty for the taking of its property. Rather, Dotty here challenges only the issuance of a writ of assistance under Wis. Stat. § 32.05(8) on the grounds that the Authority did not make a comparable replacement property available to it as required by that subsection.[3]

---

[2] The consolidated cases in the circuit court also involved an action by Dotty challenging the Authority's right to take its trade fixtures, in which Dotty prevailed. The circuit court initially denied the Authority's motion for summary judgment on its request for a writ of assistance, ruling that it must first comply with certain requirements of Wis. Stat. ch. 32. None of the rulings which preceded the court's issuance of the writ on July 16, 2001 are at issue in this appeal.

[3] Dotty responded to the Authority's petition for a writ with several affirmative defenses and a counterclaim for declaratory and injunctive relief seeking to prevent the Authority from gaining possession of Dotty's business premises. It did not, however, make an alternative claim for damages in the event of

¶ 7. The writ was issued on the Authority's motion for summary judgment, and accordingly, we review the issuance of the writ de novo, applying the same standards as the trial court. *M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175 (Ct. App. 1995). "[S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 497; Wis. Stat. § 802.08(2).

¶ 8. Neither party asserts the existence of a factual dispute that would preclude summary judgment. Disposition of the appeal therefore presents only a question of law, specifically one of statutory interpretation, which we must decide de novo. *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773 (1989). Our goal in interpreting a statute is to determine and give effect to the intent of the legislature. *DeMars v. LaPour*, 123 Wis. 2d 366, 370, 366 N.W.2d 891 (1985). Where the language chosen by the legislature is clear and unambiguous, we arrive at the intent of the legislature by "giving the language its plain, ordinary and

its removal. After the circuit court granted the writ, Dotty unsuccessfully moved the circuit court for a stay of its execution but did not thereafter seek a stay from this court. We take judicial notice of the facts that Dotty's building has been razed and construction of the arts facility has proceeded on Dotty's former property. *See* Wis. Stat. § 902.01(2)(a) and (3) (A "court may take judicial notice, whether requested or not" of a "fact generally known within [its] territorial jurisdiction."). The only relief Dotty requests in this appeal is that we "overturn the trial court's granting of the writ of assistance." The Authority does not argue, and thus we do not address, whether the appeal should be dismissed as moot.

accepted meaning." *State v. Mendoza*, 96 Wis. 2d 106, 114, 291 N.W.2d 478 (1980). If, however, the language of a statute is ambiguous, we must look beyond its language and examine such things as its scope, history, context, subject matter, and purpose. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 282, 548 N.W.2d 57 (1996).

¶ 9. The relevant provisions of WIS. STAT. § 32.05(8) are as follows:

> (b) . . .The condemnor has the right to possession when the persons who occupied the acquired property vacate, or hold over beyond the vacation date established by the condemnor, whichever is sooner, except as provided under par. (c). If the condemnor is denied the right of possession, the condemnor may, upon 48 hours' notice to the occupant, apply to the circuit court where the property is located for a writ of assistance to be put in possession. *The circuit court shall grant the writ of assistance* if all jurisdictional requirements have been complied with, if the award has been paid or tendered as required and *if the condemnor has made a comparable replacement property available to the occupants, except as provided under par. (c).*

> (c) *The condemnor may not require the persons who occupied the premises on the date that title vested in the condemnor to vacate until a comparable replacement property is made available.* This paragraph does not apply to any person who waives his or her right to receive relocation benefits or services under s. 32.197 or who is not a displaced person, as defined under s. 32.19(2)(e), unless the acquired property is part of a program or project receiving federal financial assistance.

(Emphasis added.)

■

¶ 10. Dotty did not waive its right to receive relocation benefits, and the Authority does not dispute

that Dotty is a "displaced person" within the meaning of the statute.[4] Dotty contends that the only "comparable replacement property"[5] identified by the Authority which met Dotty's criteria was not "made available" because the cost to purchase and remodel the property would be almost $1 million more than the amount Dotty could expect to receive from the Authority. Accordingly, Dotty claims the trial court erred in issuing the writ because a plain and unambiguous statutory precondition for issuing it had not been met. *See* Wis. Stat. § 32.05(8)(b) and (c). More specifically, Dotty argues that before a writ could issue, the Authority was obligated to make available to it a replacement business property which met its criteria, and which Dotty could acquire without expending a sum greater than the total of its condemnation award and the relocation benefits to which it was entitled under Wis. Stat. ch. 32.

---

[4] Wis. Stat. § 32.19(2)(e)1., a. (" 'Displaced person' means ... any person ... who moves his or her personal property from real property ... [a]s a direct result of a written notice of intent to acquire or the acquisition of the real property, in whole or in part or subsequent to the issuance of a jurisdictional offer under this subchapter, for public purposes ....")

[5] A "comparable replacement business" is defined in Wis. Stat. § 32.19(2)(c) as

> a replacement business which, when compared with the business premises being acquired by the condemnor, is adequate for the needs of the business, is reasonably similar in all major characteristics, is functionally equivalent with respect to condition, state of repair, land area, building square footage required, access to transportation, utilities and public service, is available on the market, meets all applicable federal, state or local codes required of the particular business being conducted, is within reasonable proximity of the business acquired and is suited for the same type of business conducted by the acquired business at the time of acquisition.

¶ 11. We acknowledge that WIS. STAT. § 32.05(8), read in isolation, does not qualify or explain what a condemner must do in order to satisfy the requirement that a "comparable replacement property" be "made available." The absence of qualifying language lends superficial support to Dotty's "plain meaning" argument, and, at a minimum, would lend support to an argument that the language is ambiguous. We nonetheless reject Dotty's interpretation for three reasons: (1) statutes are not to be read in isolation; (2) we have previously interpreted WIS. STAT. § 32.05(8) as requiring that a condemnor need only comply with provisions of the relocation assistance law; and (3) Dotty's interpretation is unreasonable. A discussion of each of these reasons follows.

¶ 12. A statute "may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter." *Aero Auto Parts, Inc. v. DOT*, 78 Wis. 2d 235, 239, 253 N.W.2d 896 (1977). Statutes relating to the same subject are to be construed together and harmonized. *State v. Robinson*, 140 Wis. 2d 673, 677, 412 N.W.2d 535 (Ct. App. 1987). WISCONSIN STAT. § 32.05(8)(c) expressly refers to the relocation assistance provisions and limits the applicability of the "comparable replacement property is made available" requirement to a "displaced person, as defined under s. 32.19(2)(e)" who has not waived "his or her right to receive relocation benefits or services." Given this express reference and the statutory context it provides, a reasonable reading of the "made available" requirement is that a condemnor may obtain a writ of

assistance after it has provided the relocation assistance to which a "displaced person" is statutorily entitled.

¶ 13. We have previously adopted precisely this reading of Wis. Stat. § 32.05(8). We concluded in *City of Racine v. Bassinger*, 163 Wis. 2d 1029, 473 N.W.2d 526 (Ct. App. 1991), that "there are three conditions precedent to the issuance of a writ of assistance: (1) compliance with all jurisdictional requirements; (2) payment or tender of the award; and (3) making available comparable replacement property to the occupants." *Id.* at 1035. Just as Dotty does, the condemnee in *Bassinger* claimed that a writ of assistance had wrongly been issued because the third condition had not been met. We found ambiguity in the term "occupants," but based in part on the legislative history of Wis. Stat. § 32.05(8) (1989–90)[6] and its relationship to the relocation assistance provisions, we concluded that

> the legislative intent of the language in question was to provide, as one of the three conditions precedent to issuance of a writ of assistance, that a person displaced by a condemnation have comparable replacement property made available *to the extent required by the relocation assistance law.* The LRB analysis reveals that the language in question was added to sec. 32.05, Stats., to *clarify* existing law—not to create in condemnees new substantive rights. By placing the language in subsec.

---

[6] The text of Wis. Stat. § 32.05(8) (1989–90) contained essentially the same language as that now found in Wis. Stat. § 32.05(8)(b) and (c). In the 1991 budget act, the legislature revised subsection (8) to include a definition as paragraph (a), retained most of the then existing language of the subsection as paragraph (b), and created paragraph (c) as it now reads and as we have quoted it above in ¶ 9. 1991 Wis. Act 39, §§ 1030c, g, and L.

(8), the legislature merely added a new condition, the substantive rights of which are found elsewhere in the statute.

*Id.* at 1040.

¶ 14. Dotty would have us distinguish *Bassinger* because it decided a different question than now before us, and because of the legislature's subsequent amendment of WIS. STAT. § 32.05(8). (See footnote 6.) We conclude, however, that our previous analysis and holding are applicable and controlling in the present dispute.

¶ 15. Our ultimate inquiry in *Bassinger* was whether the owner of a marina which rented property to boat owners was a "displaced person" under WIS. STAT. § 32.19, thus entitling the owner to relocation assistance in the form of having a comparable replacement property made available prior to being removed from the premises under WIS. STAT. § 32.05(8). *Id.* at 1041–43. The issue of whether Dotty was entitled to relocation assistance is admittedly not before us, given that there is no dispute that Dotty is a "displaced person" entitled to receive assistance and benefits under WIS. STAT. §§ 32.19–.25. Our holding in *Bassinger*, however, rested squarely on our conclusion that WIS. STAT. § 32.05(8) grants a condemnee no rights beyond what the legislature has authorized in the relocation assistance law, WIS. STAT. § 32.19 *et seq. Id.* at 1039–41.

¶ 16. We were quite specific in *Bassinger*, even to the point of adding emphasis to what we discerned as the legislature's intent underlying WIS. STAT. § 32.05(8): "that a person displaced by a condemnation have comparable replacement property made available *to the extent required by the relocation assis-*

390

*tance law." Id.* at 1040. Later in the opinion, we summarized our conclusion as follows: "Accordingly, we conclude that the relocation assistance law, not condemnation law, determines the extent to which the Bassingers are entitled to have made available to them comparable replacement property for the marina." *Id.* at 1041. Thus, even though the precise issue before us is not, as in *Bassinger*, whether a specific condemnee was entitled to relocation assistance, but whether a qualifying condemnee received assistance "to the extent required by the relocation assistance law," our analysis in *Bassinger* makes clear that we must look to the relocation assistance law to "determine[] the extent to which [Dotty is] entitled to have made available to [it] comparable replacement property for the [restaurant]." *Id.*

¶ 17. We also see nothing in the 1991 legislative rearrangement of the language in WIS. STAT. § 32.05(8) that alters our conclusions in *Bassinger*. Prior to 1991, § 32.05(8) was not divided into paragraphs, and it included the following language:

> The condemnor has the right to possession when the persons who occupied the acquired property vacate, or hold over beyond the vacation date established by the condemnor, whichever is sooner, except *that the condemnor may not require the persons who occupied the premises on the date title vested in the condemnor to vacate until a comparable replacement property is made available.*

WIS. STAT. § 32.05(8) (1989–90) (emphasis added). 1991 Wis. Act 39 simply moved the highlighted language to a newly created paragraph (c), where it remains today. 1991 Wis. Act 39 §§ 1030c and L.

¶ 18. Dotty asserts that by setting this language "apart as a separate and independent subsection," the

legislature rendered the "made available" requirement something more than a condition precedent to the issuance of a writ, thereby undermining the continuing validity of our analysis in *Bassinger*. We disagree. The legislative tinkering made no substantive changes to the relevant language of WIS. STAT. § 32.05(8), and it yields no indication of a legislative intent other than the one we discerned in *Bassinger*. If anything, the linkage between the "made available" requirement of § 32.05(8) and the relocation assistance law is strengthened by the 1991 revision. The newly created paragraph (c) includes two specific references to the relocation assistance law which were not present in the former § 32.05(8). *See* § 32.05(8)(c) (references to §§ 32.19(2)(e) and 32.197).

¶ 19. Before taking up our final reason for rejecting Dotty's interpretation—its unreasonableness—we briefly address whether the Authority did, in fact, make available to Dotty a "comparable replacement property . . . *to the extent required by the relocation assistance law*." *Bassinger*, 163 Wis. 2d at 1040. The trial court concluded that the Authority had done so, and Dotty does not explicitly contend otherwise until its reply brief. Instead, Dotty attempts to persuade us that the "made available" provision in WIS. STAT. § 32.05(8) requires the Authority to do something more or different than simply meeting statutory relocation assistance requirements.

¶ 20. There can be no dispute that the Authority made available to Dotty the maximum allowable "business replacement payment" authorized under WIS. STAT. § 32.19(4m). The Authority deposited $50,000 with the clerk of court and directed its payment upon Dotty meeting the statutory criteria for receiving it. *See* § 32.19(4m)(a). By the same token, although Dotty

pointedly notes that the Authority had tendered no other cash payments, the record establishes that the Authority stood ready, willing and able to reimburse Dotty for its actual moving and "re-establishment" expenses, and/or to pay a business discontinuation payment, up to statutory maximums, and had offered to do so. *See* § 32.19(3).

¶ 21. We are satisfied that by identifying potential replacement properties, obtaining renovation cost estimates for a property in which Dotty expressed some interest, tendering the maximum business replacement payment, and offering to reimburse Dotty for its other statutorily authorized relocation expenses, the Authority "made available" to Dotty a comparable replacement property "*to the extent required by the relocation assistance law.*" *Bassinger*, 163 Wis. 2d at 1040.

¶ 22. Dotty does assert in its opening brief that the Authority failed to comply with certain provisions of Wis. Admin. Code ch. Comm 202, which "establish[es] minimum standards for providing relocation payments and services." Wis. Admin. Code § Comm 202.001. Specifically, Dotty points to Wis. Admin. Code § Comm 202.92(3), which provides that a condemnor "shall offer a comparable replacement business . . . within the maximum differential payment determined," and shall undertake "[a]nother comparable study . . . to determine a new replacement payment when there is no comparable available." This subsection must be read in proper context, however. The introductory language of the rule plainly limits any replacement payment to a maximum of $50,000, as provided by statute. *See* § Comm 202.92 (intro); Wis. Stat. § 32.19(4m). Because the Authority advanced the maximum payment con-

393

templated under § Comm 202.92, there was no reason for it to conduct "another comparable study" for the purpose of revising upward a previously determined, less-than-maximum differential payment, which is the circumstance § Comm 202.92(3) addresses.

¶ 23. Dotty also cites several other administrative code provisions which it claims the Authority failed to follow, and it complains that the trial court did not consider these alleged shortcomings in the relocation assistance provided by the Authority. Our review on summary judgment is de novo, and we have reviewed the parties' submissions in support of and in opposition to the Authority's motion. Among other things, these include lengthy excerpts from the deposition of a "relocation specialist," whom the Authority retained to provide relocation services and assistance to Dotty, as well as a copy of the Relocation Program Plan approved by the Authority. The relocation specialist described the steps he took to identify some ten potential replacement locations for Dotty, his discussions with Dotty's representatives regarding the asserted unsuitability of most of the identified properties, and the remodeling estimates he obtained for the one site Dotty seemed interested in pursuing further. He also testified that he had been a relocation specialist since 1970, that he was thoroughly familiar with the requirements of Wisconsin's relocation benefits law, and that, in his opinion, "the Authority has fully complied" with those requirements.

¶ 24. Dotty points to nothing in the record which rebuts or refutes the specialist's testimony and conclusions. Many, if not most, of Dotty's complaints about the Authority's failures are rendered moot by the Authority's decision to tender the maximum allowable

business replacement payment for an owner-occupied business.[7] Moreover, we are not convinced that the type of procedural missteps Dotty alleges constitute grounds for avoiding the issuance of a writ. The property owners in *Bassinger* also asserted that the condemning authority had failed to follow various statutes and rules relating to relocation assistance benefits, which they asserted were "jurisdictional requirements" within the meaning of WIS. STAT. § 32.05(8), and thus preconditions for writ issuance. *Bassinger*, 163 Wis. 2d at 1035–36. We rejected this claim, concluding the asserted procedural defects were not a bar to the issuance of a writ of assistance. *Id.* at 1038.

¶ 25. To be sure, Dotty does not contend that the procedural failures it cites are "jurisdictional" defects. Its claim is that the alleged shortcomings should be considered in determining whether the Authority in fact discharged its responsibility to make a comparable replacement property available to Dotty. Our rationale in denying relief to the property owners in *Bassinger*, however, also disposes of Dotty's contentions, despite the reformulation of the argument. Noting that the legislature has provided other forms of redress for displaced persons who believe a condemnor has not properly complied with relocation assistance require-

---

[7] For example, Dotty argues that under WIS. ADMIN. CODE § Comm 202.92(2)(b) and (d) the Authority was required to base a replacement payment in part on the cost of improvements necessary at a new location, or on new construction costs if no comparable replacement property was available, and the Authority never did this. The failure to make these computations, however, would only be assailable if the Authority had tendered some amount less than the $50,000 maximum business replacement payment.

ments,[8] we concluded that "procedural defects" relating to relocation assistance requirements "do not present a bar to the issuance of the writ." *Id.* The circuit court before issuing the writ required the Authority to demonstrate compliance with the basic requirements of the relocation assistance law.[9] We conclude that the lesser shortcomings alleged by Dotty do not bar the issuance of a writ but may be redressed, if proven, in another forum.

¶ 26. Finally, we note that Dotty's reading of WIS. STAT. § 32.05(8) suggests that a condemnor must provide virtually unlimited relocation assistance before it can gain possession of condemned premises. In Dotty's view, a court may not grant a condemnor possession of condemned premises until a replacement property deemed acceptable by the condemnee is procured, regardless of its acquisition costs, all of which the condemnor must bear or tender. Alternatively, Dotty's interpretation of the "made available" requirement implies that it will never have to vacate the condemned property if the Authority cannot identify a replacement property acceptable to Dotty which can be acquired for an amount not exceeding the award of compensation plus the maximum relocation benefits to which Dotty is entitled. Either result is unreasonable and contrary to

---

[8] *See, e.g.,* WIS. STAT. §§ 32.20 and 32.26(5).

[9] In its first summary judgment ruling (see footnote 2, above), the circuit court determined that Dotty was an owner-occupant, entitled to a business replacement payment of up to $50,000, as opposed to the $30,000 statutory maximum for tenant-occupied businesses, which the Authority initially maintained applied to Dotty. Accordingly, the court declined to issue a writ of assistance until the Authority had tendered the higher sum. The Authority does not argue that the circuit court erred by initially denying a writ for that reason.

the legislative intent regarding the "made available" requirement that we discerned in *Bassinger*.

¶ 27. Given the limits specified by the legislature for the various relocation assistance benefit payments authorized by WIS. STAT. § 32.19, we agree with the trial court's conclusion that "[t]he law does not impose any . . . open-ended obligation upon a condemnor" to provide business relocation payments regardless of the cost to the condemnor. The obligation of the condemning agency under § 32.19 is to *assist* in the procurement and acquisition of replacement property, not to make a displaced business financially whole regardless of the cost to the condemning agency. In short, Dotty's interpretation would render meaningless the subsections of § 32.19 which place upper limits on relocation assistance payments, and it is thus an interpretation we cannot adopt. *See Capoun Revocable Trust v. Ansari*, 2000 WI App 83, ¶ 13, 234 Wis. 2d 335, 610 N.W.2d 129.

¶ 28. In this regard, we also note that the legislature has expressly provided for an exception to the limits on replacement payments under the relocation assistance law, but not for business owners. WISCONSIN STAT. § 32.19(4)(c) allows a condemning Authority to exceed statutory payment limits if a "comparable dwelling is not available within the monetary limits" for a person displaced from his or her residence. We agree with the trial court's observation that, in determining the legislature's intent regarding a condemnor's obligations to a displaced business, "[i]t is significant that the statute provides no equivalent authority for the [Authority] to exceed the limits when comparable replacement business property cannot be found."

¶ 29. Dotty's stated requirements for an acceptable replacement property included that it be able to

acquire ownership, and not just a lease, of the replacement business location; that it be situated within several blocks of its former premises;[10] and that acquisition and renovation costs not require it to increase its indebtedness. We agree with the Authority, however, that if Dotty could not acquire a replacement property within those parameters, a decision to go out of business instead of relocating with the assistance of the tendered relocation payments was a business decision for the owner of Dotty to make.[11] The relocation statutes and regulations plainly contemplate that some business-owners will opt not to relocate or ultimately be unsuccessful in doing so. *See* Wis. Stat. § 32.19(3)(b) and (c); Wis. Admin. Code §§ Comm 202.56(4) and 202.58. Accordingly, Dotty's decision to forgo consideration of a replacement site beyond its narrow criteria does not provide legal justification for it to permanently or indefinitely occupy the condemned premises.

¶ 30. Dotty also claims that the issuance of the writ constituted an unconstitutional taking because it deprived Dotty, without just compensation, of its ability

---

[10] Dotty's owner testified at a deposition that "in the hospitality industry, location, location, location is the key to general success, and . . . my plans are to try to stay in that area," clarifying that he meant "a block or two to the left, a block or two to the right."

[11] The owner testified that he had "three real estate guys out looking all over for me," all of whom were unable to locate a replacement business site he deemed acceptable for relocation. In response to a question whether he knew "of any properties in the vicinity that would be suitable that are available that you might be able to move to for less than 1.5, 1.6 million," Dotty's owner replied that he'd had "two full-time guys . . . looking for the last three years, and I've come up with nothing."

to continue operating its business. The Authority responds that Dotty waived any constitutional argument by failing to raise it in the circuit court. We agree and therefore we decline to address whether Wis. Stat. § 32.05(8), as applied to Dotty, resulted in an unconstitutional "taking" of a "right" to stay in business.

¶ 31. The trial court noted in an oral ruling that:

> Dotty's has criticized the manner of the exercise of the condemnation authority, but it has not suggested that the [Authority] does not hold the lawful authority to acquire the real estate as part of the project that is being constructed. By the same token, before oral argument today there was no suggestion in any argument presented by Dotty's that any aspect of the current condemnation law violates either the United States Constitution or the Wisconsin Constitution.

We have examined Dotty's pleadings and its submissions and briefs in response to the Authority's summary judgment motions, and none make the constitutional claim Dotty now wishes to assert. In its reply brief to this court, however, Dotty asserts that both parties raised the constitutional issue during oral argument in the circuit court.

¶ 32. We have reviewed the transcript pages Dotty cites. The Authority's counsel during argument briefly distinguished what was at issue in this litigation ("relocation benefits") from "the constitutional concept of just compensation." He argued that "there is no constitutional right to relocate." In response, and without further elaboration, Dotty's counsel stated, "I believe it ['putting a business out just as [the Authority] is trying to do here'] violates our constitute [sic] . . . [and] the federal constitution." Except for these passing references to the constitution during oral argument, Dotty's defense to issuance of the writ focused exclusively on the

Authority's alleged failure to meet the statutory preconditions for a writ because it had not provided Dotty with a comparable replacement property it deemed acceptable. The constitutional challenge that Dotty now wishes to raise was thus waived. *See Schwittay v. Sheboygan Falls Mut. Ins. Co.*, 2001 WI App 140, ¶ 16 n.3, 246 Wis. 2d 385, 630 N.W.2d 772 ("A party must raise an issue with sufficient prominence such that the trial court understands that it is called upon to make a ruling.").

¶ 33. Finally, we note that in the last paragraph of its argument, the Authority asks us to conclude that Dotty's appeal is frivolous because Dotty should have known the appeal had no basis in law nor could it be supported by a good faith argument for extension, modification or reversal of existing law. *See* WIS. STAT. RULE 809.25(3)(c)2. Beyond making this request and citing the relevant language from § 809.25(3), the Authority makes no effort to further explain its request or develop a rationale to support it. We therefore deny the request without further discussion. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (We may decline to review issues that are "inadequately briefed," such as when "arguments are not developed themes reflecting any legal reasoning" and "are supported by only general statements.").

## CONCLUSION

¶ 34. For the reasons discussed above, we affirm the appealed order.

*By the Court.*—Order affirmed.