Robert G. MORRIS, Plaintiff-Appellant,†

v.

STATE OF WISCONSIN DEPARTMENT OF TRANSPORTATION,
Defendant-Respondent.

Court of Appeals

*No. 02–0288. Submitted on briefs June 12, 2002.—Decided
October 31, 2002.*

2002 WI App 283

(Also reported in 654 N.W.2d 16.)

† Petition to review denied 2-19-03.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James W. Hammes* of *Cramer, Multhauf & Hammes, LLP*, Waukesha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Frank D. Remington*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Roggensack, Deininger and Lundsten, JJ.

¶ 1. DEININGER, J. Robert Morris appeals an order dismissing his claim challenging the Wisconsin Department of Transportation's condemnation of a portion of his land for highway purposes. Morris claims the department lacked jurisdiction to acquire the land because the department served the jurisdictional offer and award of damages on his counsel rather than on him personally. We conclude that the instructions of Morris's counsel constitute a "special circumstance" under which the department was permitted to serve the documents on Morris by sending them by certified mail to his attorney. Accordingly, we affirm the trial court's dismissal of Morris's claim on summary judgment.

## BACKGROUND

¶ 2. As part of a highway construction project, the Wisconsin Department of Transportation initiated condemnation proceedings under WIS. STAT. § 32.05 (1999–2000)[1] to acquire land owned by Robert Morris. Subsections 32.05(2)(a) and (b) require the department to provide Morris with an appraisal of the land to be acquired, and it did so. The department informed Morris by letter in September 2000 that he could obtain an independent appraisal of the land at the department's expense. *See* § 32.05(2)(b). Consistent with the statute, the letter stated that "for consideration and to qualify the charges for reimbursement . . . a copy [of an independent appraisal] must be submitted to this office within 60 days of your receipt of this letter." *See id.* ("The owner may obtain an appraisal by a qualified appraiser of all property proposed to be acquired, and . . . shall submit . . . [the] . . . appraisal to the condemnor within 60 days after the owner receives the condemnor's appraisal.")

¶ 3. Near the end of the sixty-day independent appraisal period, Morris asked the department to reduce the amount of land to be acquired. The department agreed and re-platted and re-appraised the land accordingly. The department provided Morris with a revised appraisal in early February 2001, which triggered an additional sixty-day period for Morris to obtain an independent appraisal of the property. *See* WIS. STAT. § 32.05(2)(b).

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted. WISCONSIN STAT. § 32.05 sets forth the procedures by which property may be acquired by condemnation for various public purposes, including streets and highways.

¶ 4. Morris then retained counsel, who wrote to the department as follows:

> This office has been retained by Robert G. Morris with respect to the above-referenced condemnation proceeding.
>
> It is my understanding that the Department of Transportation presented Mr. Morris with a new appraisal on January 17, 2001 [sic]. Accordingly, in accordance with the provisions of Wis. Stats. Ch. 32, Mr. Morris is exercising his right to obtain an appraisal at the Department of Transportation's expense. Upon receipt of the appraisal, a copy will be forwarded to your attention so that the Department of Transportation can pay the cost of the appraisal and then begin negotiations.
>
> *Until the appraisal has been received and forwarded to your attention, I would ask that you not contact Mr. Morris directly regarding this matter.*

(Emphasis added.) Morris is shown as a copy addressee on his attorney's letter to the department.

¶ 5. Over the next two months, Morris's counsel negotiated with the department. During the negotiations, Morris's counsel requested the department to pay a higher price and to guarantee access from Morris's property to a nearby frontage road. The department increased its offering price but not to the amount Morris's counsel had requested, and it refused to guarantee the access he had requested.

¶ 6. Morris's sixty-day appraisal period expired in early April. With negotiations at impasse and no independent appraisal in hand, the department prepared a "jurisdictional offer to purchase," *see* Wis. Stat. § 32.05(3), a document which, among other things, sets forth the amount offered for the acquisition of the land

and gives the landowner twenty days to accept or reject the offer. Although § 32.05(3) and (4) require the department to serve the jurisdictional offer on "the owner," by either personal service or certified mail, the department sent the jurisdictional offer by certified mail to Morris's counsel on April 3, 2001. Morris's counsel advised him "on or about April 10" that counsel had received the jurisdictional offer.

¶ 7. Approximately two weeks after the department mailed the jurisdictional offer to Morris's counsel, the department received Morris's independent appraisal with no accompanying cover letter. The appraisal was untimely, given that the department received it after the sixty-day independent appraisal period had expired. The department reviewed the late appraisal but concluded it provided no justification for it to increase the jurisdictional offer.

¶ 8. The twenty-day period for Morris to accept or reject the jurisdictional offer passed with no response from Morris or his counsel. Accordingly, the department prepared the "award of damages," a document which specifies the date on which the department will acquire the property and the amount of compensation to be paid the landowner, a sum that must at least equal the jurisdictional offer. *See* WIS. STAT. § 32.05(7)(a). Similar to the service requirements for the jurisdictional offer, § 32.05(7)(b) requires the department to serve the award of damages either personally or by certified mail on "all persons having an interest of record in the property taken." *See also* § 32.05(7)(a). As it did with the jurisdictional offer, however, the department sent the award of damages (along with a check for the amount of the award) to Morris's counsel by certified mail, but it did not send a copy of the award of damages to Morris.

¶ 9. The department's award of damages crossed in the mail with a letter from Morris's counsel, in which counsel requested that the department further increase the purchase price and pay for the cost of Morris's appraisal, despite the fact that the appraisal was forwarded beyond the sixty-day appraisal period. The department denied both requests.

¶ 10. Morris responded by commencing this action against the department, alleging that it lacked jurisdiction to condemn his property because it had sent the jurisdictional offer and the award of damages to his attorney, rather than serving the documents on him directly. *See* WIS. STAT. § 32.05(5) (entitling the landowner to commence a lawsuit regarding all issues other than the adequacy of compensation within forty days after service of the jurisdictional offer). Morris asked for an order "enjoining and restraining the [department] from going upon, occupying, or using any portion of" his land.

¶ 11. On cross-motions for summary judgment, the trial court ruled for the department. The court noted that Morris's counsel "specifically requested that the [department] refrain from contacting Morris directly until after receipt of Morris's appraisal." The court concluded that because the department served the jurisdictional offer on counsel several days before it received Morris's independent appraisal, the department "was acting as directed by Morris's counsel, and should not be penalized for doing so." Concerning the award of damages, the trial court held that the department's service of the document on Morris's counsel "was not unreasonable" because: (1) Morris's counsel had been actively involved in the condemnation process for over two months prior to the service of the award of damages; (2) the department had directed all

communications to Morris's counsel since he became involved in the matter; and (3) although Morris's counsel specifically requested that communications be directed to him until the completion of the independent appraisal, he did not give further instructions as to communications after receipt of the appraisal.

¶ 12. The trial court entered an order dismissing Morris's action and Morris appeals.[2]

## ANALYSIS

¶ 13. We review an order for summary judgment de novo, owing no deference to the trial court. *Waters v. United States Fid. & Guar. Co.*, 124 Wis. 2d 275, 278, 369 N.W.2d 755 (Ct. App. 1985). In reviewing the granting or denial of a motion for summary judgment, we are to use the same methodology as the trial court. *M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175 (Ct. App. 1995). Thus, we will affirm a summary judgment "when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 497; *see also* WIS. STAT. § 802.08(2). We will reverse a decision granting summary judgment, however, if the trial court incorrectly decided legal issues or if material facts were in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993).

██

¶ 14. Generally, when both parties move for summary judgment and neither argues that factual disputes

---

[2] Circuit Judge. Robert G. Mawdsley entered the dismissal order based on a prior written decision by Judge Patrick L. Snyder, who granted the department's motion for summary judgment and denied Morris's.

bar the other's motion, the " 'practical effect is that the facts are stipulated and only issues of law are before us.' " *Lucas v. Godfrey*, 161 Wis. 2d 51, 57, 467 N.W.2d 180 (Ct. App. 1991) (citation omitted). That is the case here. Morris's arguments on appeal challenge only the legal sufficiency of the department's service of the jurisdictional offer and the award of damages on his counsel. Neither party asserts a dispute of material fact that would preclude awarding summary judgment to the other.[3]

¶ 15. We agree with Morris that the department must properly serve both the jurisdictional offer and the award of damages in order for it to lawfully condemn a landowner's property. WISCONSIN STAT. § 32.05(4) provides in relevant part:

> **(4)** HOW NOTICE OF JURISDICTIONAL OFFER IS GIVEN. The giving of such notice is a jurisdictional requisite to a taking by condemnation. Such notice may be given by personal service in the manner of service of a circuit court summons, or it may be transmitted by certified mail.

Similarly, § 32.05(7)(b) provides that a copy of the award of damages "shall be served on or mailed by certified mail to all persons named therein," and under § 32.05(7)(c), title to the condemned property does not vest in a condemnor until after "service of the award [of damages] has been completed."

¶ 16. We thus conclude that the provisions concerning service of the two documents are among "the

---

[3] Morris argued in the trial court that the department failed to negotiate for the acquisition of his land in good faith, but he does not renew the argument on appeal.

procedural steps in ch. 32, Stats., [that] are recognized as constituting such a valuable right of the property owner that they are deemed by the statute itself . . . to be jurisdictional in nature." *City of Racine v. Bassinger,* 163 Wis. 2d 1029, 1036, 473 N.W.2d 526 (Ct. App. 1991). We quoted with approval in *Bassinger* the trial court's conclusion that in order to be deemed "jurisdictional," steps in the condemnation procedure must have two features:

> *The first* is that they are contained within the particular statute which sets forth the condemnation procedure, that is the things which must be done to have and to exercise the power to acquire property by eminent domain . . . . *The second* is that the statute expressly or impliedly denies the power of the condemnor to act unless the particular step is taken . . . .

*Id.* at 1036–37. The provisions in WIS. STAT. § 32.05 regarding service of the jurisdictional offer and the award of damages meet both requirements.

¶ 17. We must next determine, therefore, whether the department's service of the jurisdictional offer and the award of damages on Morris's counsel was sufficient to allow the department to lawfully acquire Morris's land. Morris correctly asserts that the relevant provisions of § 32.05 contemplate service of the two documents on a landowner personally, and that generally, "an attorney is not authorized by general principles of agency to accept on behalf of a client service of process commencing an action." *Gangler v. Wisconsin Elec. Power Co.,* 110 Wis. 2d 649, 657, 329 N.W.2d 186

(1983).[4] The department counters that in "special circumstances" an attorney may accept service of a document ordinarily required to be served on his or her client. *See id.* at 658 (recognizing that a "special circumstance" exists " 'when an attorney at law formally acknowledges the receipt of a document as an attorney on behalf of a client.' " (citation omitted)). Citing *Dairyland Fuels, Inc. v. State*, 2000 WI App 129, 237 Wis. 2d 467, 614 N.W.2d 829, the department contends this case presents a "special circumstance" under which its service of the jurisdictional offer and award of damages on Morris's counsel was sufficient to allow it to lawfully acquire Morris's property. We agree.

¶ 18. The landowner in *Dairyland Fuels*, unhappy with the amount awarded by a county condemnation commission, appealed the award to the circuit court.[5] *Id.* at ¶¶ 3–4. Wisconsin Stat. § 32.05(10)(a) requires an appellant to give notice of a circuit court appeal "by certified mail or by personal service" to "all persons other than the appellant who were parties to the proceeding before the commissioners." The Department of Transportation, which was also the condemnor in *Dairyland Fuels*, claimed that the landowner failed

---

[4] We recognize that the condemnation procedures set forth in Wis. Stat. § 32.05 do not constitute "an action." We are nonetheless satisfied that, given the references in the statute to a "jurisdictional requisite" and "the manner of service of a circuit court summons," the precedents we discuss in this opinion may appropriately be applied to the statutory service requirements for the documents at issue.

[5] Under Wis. Stat. § 32.05(9), a landowner may appeal the amount of a condemnor's award of damages by applying for assignment of the matter to a commission of county condemnation commissioners. The landowner may in turn appeal the commission's award to the circuit court. Section 32.05(10).

to comply with this requirement because it had served the notice of appeal on the department's counsel (an assistant attorney general) rather than on the department itself. *Dairyland Fuels*, 2000 WI App 129 at ¶ 17.

¶ 19. The landowner argued that the case presented a "special circumstance" that permitted service on the attorney general's office. *Id.* at ¶ 27. In support, the landowner noted that the assistant attorney general had appeared on behalf of the department throughout the condemnation proceedings and had requested in a letter to the commission and to the landowner's counsel "that the [department] . . . be removed from your mailing matrix, as I represent [the department] herein." *Id.* at ¶ 26. We concluded that because the assistant attorney general, in addition to appearing on behalf of the department throughout the condemnation proceedings, had instructed the landowner to serve documents on her without any limiting language as to when the instructions no longer applied, "it was not unreasonable for Dairyland to infer that . . . it could serve the attorney general rather than the [department]." *Id.* at ¶ 28.

¶ 20. We likewise conclude here that the instruction of Morris's counsel constitutes a "special circumstance" which excused the department from having to serve the jurisdictional offer on Morris personally. Just as the assistant attorney general in *Dairyland Fuels* communicated her desire to receive documents on behalf of her client, Morris's counsel instructed the department to "not contact Mr. Morris directly regarding this matter" until the department received Morris's independent appraisal. The letter containing this instruction indicates that a copy of it was sent to Morris.

¶ 21. The department had not yet received an independent appraisal from Morris at the time it pre-

pared the jurisdictional offer, and we conclude that it was not unreasonable for the department to infer that it should serve the offer on Morris's counsel. Morris's attorney had communicated a willingness and capacity to receive documents on behalf of his client, which is a recognized "special circumstance" under which a party may be relieved of the requirement to serve a represented party personally. *See Gangler*, 110 Wis. 2d at 658.[6] As the trial court aptly noted, the department was merely "acting as directed by Morris's counsel, and should not be penalized for doing so."[7]

¶ 22. We further conclude that Morris's counsel's instruction also constitutes a "special circumstance" with regard to service of the award of damages. Although counsel instructed the department to "not contact Mr. Morris directly" "[u]ntil the appraisal has been received and forwarded," counsel gave no specific direction regarding communications after the department's receipt of the independent appraisal. This was not unlike the circumstance in *Dairyland Fuels*, where the

---

[6] Morris contends in his reply brief that the instruction in his counsel's letter "cannot be construed as a 'requirement' to serve [his] counsel" with the documents at issue in this case. This argument, however, overlooks the plain language of the letter itself: "Until the appraisal has been . . . forwarded to your attention, *I would ask that you not contact Mr. Morris directly regarding this matter.*" (Emphasis added.) The necessary implication of this language is an instruction to the department to send subsequent communications concerning the condemnation to Morris's counsel instead of to Morris personally.

[7] We note further that Morris's counsel notified him both that the department had been instructed to communicate exclusively with counsel and that counsel had received the jurisdictional offer from the department. There is no indication in the record that Morris objected to either action prior to filing suit.

assistant attorney general's letter lacked "limiting language that would put a party on notice that the attorney general's instructions no longer applied" at a particular juncture in the condemnation proceedings. *Dairyland Fuels*, 2000 WI App 129 at ¶ 28.

¶ 23. Moreover, we note that, even if the letter from Morris's counsel could be construed as suggesting that the department should serve documents directly on Morris following the department's receipt of the independent appraisal, the department had by then served the jurisdictional offer by certified mail on Morris's counsel. The department received no objection from Morris's counsel (or from Morris, see footnote 7) to the manner of service of the offer during the three weeks which intervened between the mailing of the offer and the mailing of the award. The only communication the department received during that time was the belated appraisal itself, unaccompanied by any request to direct future communications to Morris personally, or even by any indication of who had forwarded the appraisal to the department. In short, we see no reason why the "special circumstance" created by Morris's counsel's direction that the department not contact Morris directly should not govern the department's service of the award of damages as well as its service of the jurisdictional offer.

¶ 24. Morris advances three reasons why we should not apply the *Dairyland Fuels* rationale in this case. According to Morris: (1) *Dairyland Fuels* "involved an appeal taken from a Condemnation Commission award," as opposed to a dispute concerning documents served during the department's initial efforts to acquire the land; (2) in addition to sending a letter requesting that her client be removed from the parties' mailing list, the assistant attorney general in *Dairyland*

*Fuels* also filed and served a formal Notice of Appearance requesting that "all documents hereafter filed in this action be served upon" her (*id*. at ¶ 29); and (3) the *Dairyland Fuels* decision rested in part on the supreme court's holding in *DOT v. Peterson*, 226 Wis. 2d 623, 594 N.W.2d 765 (1999), that the pertinent terms of Wis. Stat. § 32.05 permit landowners to serve a notice of appeal of a condemnation award on the attorney general rather than on the department.

¶ 25. We are not persuaded by Morris's efforts to distinguish *Dairyland Fuels*. First, we can discern no meaningful difference between our analysis in *Dairyland Fuels* concerning the sufficiency of service of a notice of appeal of a condemnation commission award and the facts at hand. Like the service of a jurisdictional offer and award of damages, service of a notice of appeal is a "jurisdictional" prerequisite to the ensuing steps in the condemnation and review process. *See Dairyland Fuels*, 2000 WI App 129 at ¶ 8. We conclude that our reasoning and conclusions regarding the validity of serving counsel instead of a party under "special circumstances" are as valid on the present facts as on those in *Dairyland Fuels*.

¶ 26. Second, although we noted in *Dairyland Fuels* that the assistant attorney general's notice of appearance "[p]erhaps more strongly" evinced her intent to accept all documents pertaining to the condemnation action than did her letter, *id*. at ¶ 29, we had already determined that the letter itself had created a "special circumstance" permitting service on counsel in lieu of her client. *See id*. at ¶¶ 27–28. Our discussion of the notice of appearance was "[i]n addition," *id*. at ¶ 29, to our conclusion that the landowner could reasonably infer from counsel's letter that subsequent documents could be served on the attorney. *Id*. at ¶ 28.

830

¶ 27. Finally, we explained in *Dairyland Fuels* that the effect of the assistant attorney general's letter on the sufficiency of service was a second and independent ground for affirming the trial court's decision, not one that was linked to or in any way dependent on the supreme court's analysis in *DOT v. Peterson. See Dairyland Fuels*, 2000 WI App 129 at ¶ 18 ("Dairyland responds that service on the attorney general was proper for two reasons . . . . We concur with Dairyland on both points."). In short, we are satisfied that the analysis in *Dairyland Fuels* on which we rely may be properly applied to the present dispute.[8]

## CONCLUSION

¶ 28. For the reasons discussed above, we affirm the appealed judgment.

*By the Court.*—Order affirmed.

---

[8] We caution the department, however, that although we conclude its service of the jurisdictional offer and award of damages was sufficient under the particular facts of this case, we deem it a better practice to serve the documents on both the landowner and the landowner's counsel should similar circumstances arise in the future.