Neilson and wife vs. Chicago, Milwaukee & Northwestern R'y Co.

some way affected the liability of the company, is unsound. A contract to renew the insurance was or was not made. If it was made, any neglect of Byron King to ascertain or find out whether the renewal receipt for the store had been made out, would not relieve the company from its contract. This seems too plain to require discussion.

. *Taylor v. Phœnix Ins. Co.*, 47 Wis., 365, was an action upon the policy itself. The court held that the parol negotiations did not amount to a complete contract of insurance *in præsenti,* and therefore that there could be no recovery on the policy. The case is very plainly distinguishable from the one at bar.

Without further dwelling upon the case, we will say that we see no error in the record of which the defendant can complain.

*By the Court.*— The judgment of the circuit court is affirmed.

---

NEILSON and wife vs. THE CHICAGO, MILWAUKEE & NORTH-
WESTERN RAILWAY COMPANY.

*October 24—November 20, 1883.*

RAILROADS: EMINENT DOMAIN. *(1) Evidence of elements of damage: discretion of court. (2) Damage from improper construction excluded. (3) Evidence of facts known from view. (4) Opinions. (5) Cross examination as to value. (6) Presumption as to competency of witness as to value.*

1. The extent to which a witness may testify as to the elements or items which go to make up the amount fixed by him as the depreciation in the value of land caused by the location of a railroad across it, may be limited and controlled by the trial court in its discretion.

2. In the assessment of damages to such land no damage caused by the improper construction of the railroad can be included.

3. It is not error to exclude evidence of facts which the jury know from an authorized view of the premises in question.

4. Opinions as to matters concerning which the jury can form an opinion as intelligently as can the witnesses, are inadmissible.

5. Upon the assessment of the damages to land by reason of the location of a railroad across it, it is not error to permit the plaintiff's witnesses to be cross-examined as to what they believe the land would sell for now and what they think it was worth before the railroad crossed it, or to permit the plaintiff to be cross-examined as to what he paid for the land.

6. Where the bill of exceptions is not certified to contain all the evidence this court will presume that witnesses who have testified as to the value of certain land and the depreciation in such value caused by a railroad, were shown to be duly qualified and competent to testify in that behalf.

APPEAL from the Circuit Court for *Dane* County.

The defendant company located and constructed its railway over and across the plaintiffs' farm of 160 acres, in the town of Blooming Grove, Dane county, and instituted condemnation proceedings to obtain the right of way for the same through such farm. An award of damages having been made by commissioners duly appointed for that purpose, an appeal was taken therefrom to the circuit court of Dane county. A trial of the appeal resulted in an assessment by a jury of $300 for the value of the land of plaintiff actually taken by the company, and of $1,987.83 for the damages to the residue of plaintiffs' land by reason of the construction and operation of the railway through their farm,— in all $2,287.83. The jury viewed the premises. From the judgment rendered pursuant to the verdict the plaintiffs appeal. All of the errors assigned are upon the rulings of the court rejecting testimony offered by the plaintiffs, and admitting testimony given on behalf of the railway company. The exceptions by the plaintiffs to such rulings are very numerous, but less than one half of the rulings thus excepted to are assigned as errors. Only those so assigned are considered by the court. The questions objected

to, the rulings upon which objections are assigned as error, are as follows:

(1) A witness on behalf of plaintiffs, among other things, stated, " He has got to remove his barn." Objected to. *Court:* "The witness has no right to say he· has got to remove his barn."

Direct examination of plaintiffs' witness. (2) *Question.* State whether in your opinion that barn that stands there can be used with safety by a farmer? Objection sustained. (3) *Q.* As the road is now, is there a safe and proper place for a barn? Objected to; sustained. (4) *Q.* State how that barn and barn-yard are affected as to safety by the railroad running there as it does? Objected to; sustained. (5) *Q.* What safe and proper place is there for a barn anywhere else on the farm? Objected to; sustained. (6) *Q.* Point out a safe and proper place for a barn? Objected to; sustained. (7) *Q.* Considering the present cost · of labor and material, what would be the probable cost to put up a new barn, as valuable as the one there now? Objected to; sustained. (8) *Q.* (To one of the plaintiffs): Point out a suitable place to put your buildings since the railroad has been constructed? Objected to; sustained. (9) *Q.* State, in your judgment, how many persons would be required to drive cattle or stock across that track, back and forth, as those things are now? Objected to; sustained. (10) *Q.* State what the inconveniences would be in going across that track with stock from one side to the other? Objected to; sustained. (11) *Q.* (On cross examination of plaintiffs' witness): " I want to ask you what you believe this forty would sell for now?" Objected to; overruled, and question answered. (12) *Q.* What do you think that north forty was worth before the railroad crossed it? Objected to; overruled, and answered. (13) *Q.* (To plaintiff, on cross examination): What did you pay for that forty? Objected to; overruled, and answered. (14) (To a witness for plaint-

iffs on his direct examination). *Q.* Referring to the barbed-wire fence built by the company: Is it an injury to the farm on account of horses and colts pastured in the fields adjoining that fence? Objected to; sustained. (15) *Q.* Is it, in your opinion as a farmer, practicable to keep horses and colts on that farm, and, if so, on what part of it, in the condition it is in, in respect to those fences on that track? Objected to; sustained. (16) *Q.* Is it practicable, or can a man climb the wire fence? Objected to; sustained. (17) *Q.* (Plaintiff was describing the location of the crossings, and that others were needed). " You wanted a crossing so that you could go from this piece to this one, and they (the company) refused it?" Objected to; sustained. (18) *Q.* What was the time they (the company) fenced up this right of way? Objected to; sustained. (19) *Q.* State whether or not they took down and kept down your fences on the farm there during the process of the construction of the road, and for how long? Objected to; sustained. (20) *Q.* State whether, during the time the road was being constructed, you were put to expense in keeping your stock confined, so as not to damage your crops, and those of your neighbors, and, if so, how much? Objected to; sustained. *Court:* "I do not believe any special damages they may have done are recoverable in this form of action." (21) *Q.* How long, during the time they were building the road, did they keep down the fences between your pasture lots and your grain fields? Objected to; sustained. (22) *Q.* How many fences within the right of way did they remove and keep down during the time they were building the road? Objected to; sustained. (23) *Q.* What effects did their removal have upon your fields? Objected to; sustained. (24) *Q.* (Plaintiff having testified on direct examination that he was insured when the right of way was taken). State whether your insurance was canceled on account of the proximity of the railroad to your buildings, and also state

Neilson and wife vs. Chicago, Milwaukee & Northwestern R'y Co.

what other effort you made to obtain an insurance upon your buildings, and with what success? Objected to; sustained. (25) *Q.* (Put to witness for defendant on cross examination): "Don't you know that the price of a farm has been for the last seven or eight years, until a year or two, depressed so that they have not brought fair value?" Objected to; sustained. (26) *Q.* (To witness for defendant on cross examination): What is your land worth? Objected to; sustained. (27) *Q.* How much did you assess your land at? Objected to; sustained. (28) The respondent called as witnesses on the value of appellant's farm, Wm. R. Taylor, and others, residents of other towns, and distant therefrom several miles, each of whom was objected to by plaintiffs as not qualified to speak as to the market value of appellant's farm. Objection overruled. (29) *Q.* (On cross examination of defendant's witness, Arthur): " Do you know what lands are held at by the owners?" Objected to; sustained.

The cause was submitted for the appellants on the brief of *Winans, Fethers & Jeffris,* and for the respondent on that of *Wm. F. Vilas.*

LYON, J. There are certain established rules of evidence by which the rulings of the circuit judge on the trial rejecting or admitting testimony must be tested. These will be stated and briefly considered.

1. It is settled that the rule by which the damages to plaintiffs' land adjoining the defendant's railway is to be determined, is the depreciation of the market value of such land caused by the construction and operating of the railway through their farm, less any special benefits which may thereby accrue to the plaintiffs. Also that witnesses may, after stating the amount of depreciation, testify as to the elements or items which make up that amount. In other words, they may state their grounds or reasons for fixing the damages at the specific sum named by them.

The admissibility of testimony of the character last mentioned was first asserted in this state in *Snyder v. W. U. R. R. Co.*, 25 Wis., 60, under the qualifications and restrictions stated in the opinion written by the present chief justice. One of these qualifications is that if such testimony has been received, the same should not be submitted to the jury as a basis for their assessment of damages. Because such testimony was so submitted in *Hutchinson v. C. & N. W. R'y Co.*, 37 Wis., 582, the judgment was reversed. The opinion by the late chief justice in that case so clearly states the nature and extent of the decision in *Snyder v. W. U. R. R. Co.*, and the grounds for admitting, and the effect of, the kind of testimony under consideration, that we are justified in quoting from it somewhat at length. It is there said: "The rule in *Snyder v. W. U. R. R. Co.* is that the measure of damages is the actual depreciation in value as established in evidence, exclusive of all remote, fanciful, or speculative injuries; but that, in order to account for and support their opinion of depreciated value, the witnesses who prove it may be permitted to state all causes of injury which they believe go to make up the depreciation to which they testify. But these do not go as evidence to the jury to assess damages upon, but only as means by which the jury can estimate the value of the evidence of depreciated value. This is not distinction without difference; it is a practical and important one. The witnesses who are permitted to state the grounds of their judgment, are subject to cross examination, and their judgment to criticism; there is some safety in permitting them to speculate on the causes of depreciation. But to admit evidence of remote and conjectural sources of injury for the jury to consider and assess damages upon, without restraint or scrutiny, would be going outside of all safe rule and plunging into the abyss of wild and supposititious damages. We think that *Snyder's Case* went fully as far as it is safe to go,— farther, perhaps, than

they go elsewhere (*Presbrey v. O. C. & N. P. R'y Co.*, 103 Mass., 1; *Sunbury & E. R. R. Co. v. Hummell*, 27 Pa. St., 99); — and we are not disposed to go beyond it. Witnesses may testify to depreciation and be permitted to state the grounds of their opinion, as in *Snyder's Case;* but evidence of remote and conjectural causes of depreciation should not be submitted to the jury as a basis for their assessment of damages." Page 610. See *S. C.,* 41 Wis., 541.

It will be observed that such testimony cannot properly go to the jury as the basis for an assessment of damages, but only as aiding the jury to determine the weight they ought to give to the direct testimony of depreciated value. Its sole function is to strengthen the testimony of the witnesses on that subject. Ordinarily such testimony is inadmissible on behalf of the party who produces the witness. It is the function of a cross examination thus to test the grounds and value of the testimony. But, for reasons satisfactory to the court, it was determined that the party might, in this class of cases, test the value of the testimony of his witness by a sort of cross examination. The rule, however, is exceptional, and, as intimated in *Hutchinson v. C. & N. W. R'y Co., supra,* should not be extended. The privilege thus accorded the plaintiff is very liable to abuse, to prevent which it is necessary that the trial court should have a liberal discretion in the matter of admitting or excluding such testimony. Indeed, were the court to exclude it entirely, it is not clear that it would be error. We do not decide that proposition, but because such testimony is only collateral to the real issue in the case; because it partakes largely of the nature of cross examination; because its admission in this class of cases is exceptional; and more especially because its uncontrolled admission may raise numerous side issues on collateral matters, thus leading to great abuses,— we hold that the trial court may, in its discretion, limit and control the extent to which such testimony shall be received, just as

the court may always do in the investigation of any matter which is merely collateral to the issue. It necessarily follows that nothing short of an abuse of discretion in that behalf will work a reversal of the judgment. A considerable number of the questions propounded in this case to the witnesses by the plaintiffs, to which the court sustained objections, called for testimony relating only to the grounds or reasons upon which those witnesses fixed the depreciation in the value of plaintiffs' farm by reason of the construction of the railroad through it. We do not think that any of these rulings involve any abuse of a sound discretion.

2. Any damages to the land of plaintiffs, caused by an improper construction of a railroad, cannot lawfully be included in the assessment. This proposition was held in *Lyon v. G. B. & M. R'y Co.*, 42 Wis., 538. It is there said: "When the damages to such contiguous lands are appraised by the commissioners before the railroad is constructed, the appraisal should be made with reference to the effect upon them of the railroad when properly constructed. If the appraisal is not made until after the railroad is constructed, it should, we think, be made on the same basis. If it is properly constructed, its actual effect upon the contiguous lands should control the appraisal; but if improperly or negligently constructed, no additional damages should be given for that reason. The remedies of the land-owner in such a case are to compel the company, by appropriate judicial proceedings, to construct its road in a proper manner, or, by a common law action, to recover damages for its failure to do so." Some of the questions to which the court sustained objections called for estimates of damages of that character, and such testimony was clearly inadmissible.

3. Many of the questions called for facts within the knowledge of the jury, who, by order of the court, had viewed the premises, and who knew the facts called for as well as the witnesses could have known them. Other ques-

Neilson and wife vs. Chicago, Milwaukee & Northwestern R'y Co.

tions called for the opinions of witnesses in respect to matters concerning which the jury could form an opinion as intelligently as could the witnesses. Opinions in such cases are entirely outside the range of authorized expert testimony. These rules are elementary, and they justify very many of the rulings of the circuit judge. A few of the rejected questions were answered in other portions of the testimony, and some of them seem immaterial. It would be a profitless task to discuss each interrogatory in this opinion. It must suffice to say that they have been carefully considered, in the light of the above rules of evidence, and our conclusion is that each of the material questions to which an objection was sustained, contravenes one or more of those rules, or was properly ruled out by the court in the exercise of a sound legal discretion.

4. The objections by plaintiffs to questions put to their witnesses on behalf of defendants, by way of cross examination, were properly overruled. These questions were clearly competent. At least, it was within the discretion of the court to permit them to be put on cross examination.

5. The objection that ex-Gov. Taylor, and other witnesses for defendant, were not competent witnesses to testify to the value of plaintiffs' farm, and the depreciation in such value caused by the railroad, is not well taken. The bill of exceptions does not contain all of the evidence. Hence, were it silent on the subject, we should be bound to presume, in support of the ruling allowing them to testify, that it was made to appear that they were duly qualified witnesses in that behalf. Enough appears in the bill, however, to show that they possessed the requisite knowledge of the farm and its value to make them competent witnesses in respect thereto.

Upon the whole case we conclude that the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.