SCHEY ENTERPRISES, INC., Appellant, v. STATE (Department of Transportation, Division of Highways), Respondent.

*No. 180. Argued September 8, 1971.—Decided October 5, 1971.*
(Also reported in 190 N. W. 2d 149.)

362

For the appellant there were briefs by *Callahan & Arnold* of Columbus, attorneys, and *Richard R. Rynders* of Madison of counsel, and oral argument by *Mr. Rynders.*

For the respondent the cause was argued by *E. Gordon Young,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J.   The issues presented are:

(1)  Was it error to allow Brown to testify as to values prior to the date of taking?

(2)  Did the court err by commenting on Brown's qualifications in the presence of the jury?

(3)  Was it error to deny the plaintiff's motion for a directed verdict?

This court, when reviewing a jury verdict, need consider only that evidence which supports the verdict, and will not reverse that verdict if credible evidence reasonably supports the jury conclusion. *Besnah v. Fond du Lac* (1967), 35 Wis. 2d 755, 151 N. W. 2d 725; *Weeden v. Beloit* (1966), 29 Wis. 2d 662, 139 N. W. 2d 616. However, if the jury verdict is based in whole or in part upon improperly admitted evidence so as to substantially prejudice a party's case, a reviewing court may set aside the award. 5 Nichols, *Eminent Domain* (3d ed.), p. 17–7, sec. 17.1 [3]. *Neilson v. Chicago, M. & N. W. R. Co.* (1883), 58 Wis. 516, 17 N. W. 310.

The issue then becomes whether the jury verdict was founded, at least in part, upon Brown's testimony which appellant urges was improperly admitted.

Brown testified that on July 20, 1967, the loss to appellant due to the taking of the plaintiff's land was $5,300. He would not relate that value forward to May 3, 1968, the day of taking. Appellant contends that this testimony was improperly admitted by the court.

At the trial, Brown testified on direct examination as follows:

"Q. . . . . Incidentally, when did you make your appraisal?

"A. I made my appraisal on July 20, 1967.

"*Q.* Now do you know the date that the State actually acquired title to any part of Mr. Schey's property?

"*A.* I understand it was May, 1968. I don't have the date.

"*Q.* All right, and have you made any further reconnaissance or study or check of the property since that time?

"*A.* I have not reappraised it. I glanced at it for interest and last Sunday I spent some time going over the property.

"*Q.* And when you were asked to give your opinion here today, that is your present opinion as to what the value was in 1968, is that correct?

"*A.* No, my opinion will be as to what the value was on the date that I appraised the property, July 20, 1967."

At this point plaintiff's counsel, outside the presence of the jury, moved that Brown not be permitted to testify as to his appraisal because it was not made in accord with the statutes of Wisconsin.

The relevant statute is:

"**32.09 Rules governing determination of just compensation.** In all matters involving the determination of just compensation in eminent domain proceedings, the following rules shall be followed:

"(1) The compensation so determined and the status of the property under condemnation for the purpose of determining whether severance damages exist shall be as of the date of evaluation as fixed by s. 32.05 (7) (c) or 32.06 (7)."

The trial court indicated it would grant the motion unless Brown could relate his opinion to the date of taking. Plaintiff's counsel then made a *voir dire* examination of Brown to ascertain that he could not relate his July 20, 1967, value forward to May 3, 1968. The testimony, in part, is as follows:

"*Q.* All right. Are you able to state whether or not property values in the area of the Schey Enterprise property located in the city of Sun Prairie at the intersection

of Highways 151 and 19 have gone up between the period of July 20, 1967 and May 3rd of 1968?

"*A.* At the time of the adverse, Mr. Callahan, I had no check on what had transpired since my appraisal had been made.

"*Q.* Do you know?

" . . .

"*A.* I have subsequently re-examined the property. I have subsequently examined my files of the sales which have transpired since they were checked for this appraisal as of July 20, 1967. I note that there are other sales. I note that the property has changed significantly since 1967. I would need to make an appraisal backdated two things: one, to review the sales in my judgment, and two, to check personally to see what the situation was on that property at the time of the taking and this I would have to try to establish to my own satisfaction from disinterested people.

"*Mr. Callahan:*

"*Q.* All right. Let me ask you this question. Are you prepared this morning to testify as to the value of the property as of May 3, 1968?

"*A.* I repeat that I would again have to check on the site, to check with people that would know what had been on the site in 1967.

"*The Court:* Excuse me, I don't like to interrupt you but aside from your explanation, you can answer that question yes or no. Your answer was no, wasn't it?

"*A.* No.

"*Mr. Callahan:* That's all.

"*The Court:* Under the circumstances, the court would have to declare the testimony is not probative on the issue."

After an *in camera* conference the court reversed its position somewhat and permitted Brown to testify. The court stated that Brown's opinions as of July 20, 1967, were relatively close to the date of taking and that this testimony could be considered as a comparable sale and, as such, material evidence.

Over the plaintiff's repeated objection, Brown testified as to the July 20, 1967, values and the difference of $5,300.

A cross-examination of Brown revealed that he agreed with plaintiff's counsel that there had been an increase in real estate values in the area in question between the date of his appraisal in July of 1967, and the actual taking in May of 1968.

On redirect examination counsel for the state attempted to show the increase in value of the real estate in question was due to the highway improvement which is, of course, noncompensable.

The following testimony appears:

"*A.* To value them I would have to check what the property was at that time and also relate the new sales. There has been an increase in values because of the taking there—not the taking but the improvement.

"*Q.* In other words, you say there has been an increase in the valuation of property because of the public improvement?

"  . . .

"*Q.* Well, if in fact the improvement has contributed to the increase in the valuation of the property that would not have been included as a property valuation in before value, would it anyway?

"*Mr. Callahan:* I'm going to object to that as a leading question.

"*The Court:* I'll sustain the objection. The other point is he's made no study of this. He doesn't know what the values are. I think the court would take judicial notice of the fact that values in the area have increased because of inflation and I think you would too, wouldn't you, Mr. Brown?

"*A.* I would.

"*The Court:* So you have a combination of factors."

Mr. Brown did not indicate what the increase in value was nor what part should be attributed to the improvement, nor what part to a general inflation of values.

Sec. 32.09 (1), Stats., has set a necessary but nevertheless arbitrary standard for fixing the compensation to be paid for land condemned in eminent domain proceedings, namely, the day of taking as the date of valu-

ation. To allow an expert to give opinions of values based on other dates of appraisal would introduce a doubly artificial standard, a standard that would shift upon the ceaselessly moving sands of an appraiser's convenience and degree of preparation.

We do not believe that this court should foster a policy whereby a party is encouraged not to prepare his case adequately. In the instant case the state should not be allowed to take advantage of the failure of its own principal witness. The present rule that the value given must be related to the day of taking should not be abrogated. *Riddle v. Lodi Telephone Co.* (1921), 175 Wis. 360, 185 N. W. 182. It is stated, at page 364, as follows:

". . . It is a fundamental principle that the market value of property taken for a public use shall be ascertained as of the time of the taking. . . ."

The court of one of our adjoining states has ruled on the question of whether an appraisal made before the date of taking and not related forward to that date can be admitted as evidence. *Crist v. Iowa State Highway Comm.* (1963), 255 Iowa 615, 123 N. W. 2d 424. In *Crist*, the court, in considering the admissibility of an appraisal made one year before the date of condemnation, stated at pages 629, 630:

". . . Without doubt, the reasonable market value is to be determined as of the time of, or immediately preceding, the condemnation. But we are not prepared to say that an appraisal made one year before is inadmissible in evidence. . . .

". . . There is no showing that conditions had changed in the meantime; in fact, the record is to the contrary. The trial court did not abuse its discretion in admitting the evidence."

The court in *Crist* noted that the undenied evidence in the record demonstrated that the conditions on the land as to "location, use and general condition" were the same

on both dates. The result in *Crist* is consistent with the rule enunciated in 29A C. J. S., *Eminent Domain,* p. 1189, sec. 273 (1), that it is competent to show the value of the property within a reasonable time of the taking of the property.

In this case the record shows the conditions were not the same. As noted above, Brown testified there had been an increase in values and acknowledged it was due to two factors, the improvement and inflation, but he did not state how much the increase was nor what portion of it was attributable to either of the two causes. Further, Brown had testified he did not have an opinion as to the value on the day of taking and could not give one without further preparation. Under these circumstances we think his opinion as to the values on July 20, 1967, was immaterial and erroneously received.

There remains—was the error in receiving this testimony prejudicial? We believe it was.

The rule is that the award will not be set aside if there is evidence to sustain the award.

The jury viewed the premises. That factor is entitled to some weight in support of the verdict. But it is difficult, if not impossible, to give it much support in reviewing a record.

We have considered all of the testimony concerning comparable sales and considered it as substantive evidence. We cannot find any real support for the jury finding of $5,300 in that evidence. It is highly probable, if not a certainty, that the jury rejected the testimony of the expert Kalisch and accepted as its finding the exact amount as stated in the immaterial testimony of Mr. Brown. We are of the opinion that the verdict is not supported by sufficient credible and material evidence and must be set aside, and the plaintiff-appellant granted a new trial.

At the time in the trial when Brown was permitted to testify as to values, the trial court, at some length, stated

to the jury that Brown was a qualified and competent real estate appraiser and could give his opinion as to the values of the property in question if he had such an opinion.

The statements made to the jury were not erroneous. It was a correct ruling on Brown's qualifications. Upon reflection it might have been more judicious for the trial court to await such time as he fully instructed the jury to comment upon the qualifications of expert witnesses; however, we do not consider it to be error, especially in the context of the trial as it progressed.

The plaintiff-appellant also contends that the court was in error in refusing to grant its motion for a directed verdict in the amount of $17,700 as testified by its witness Kalisch.

If the testimony of Brown as to the values on July 20, 1967, is stricken there is still evidence in the record that challenges or casts substantial doubt as to the accuracy of Kalisch's opinion. Under these circumstances the jury was not obligated to accept his opinion as verity, and the plaintiff-appellant was not entitled to a directed verdict.

*By the Court.*—Judgment reversed and cause remanded for a new trial.