Timothy P. Otterstatter, Plaintiff-Appellant,

v.

City of Watertown, Defendant-Respondent.

Court of Appeals

*No. 2016AP2000. Submitted on briefs May 8, 2017.
—Decided October 26, 2017.*

2017 WI App 76

(Also reported in 904 N.W.2d 396.)

698

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Alan Marcuvitz, Smitha Chintamaneni*, and *Nicholas J. Boerke* of *von Briesen & Roper, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Steven M. Streck* and *Sara K. Beachy* of *Axley Brynelson, LLP*, Madison.

Before Sherman, Blanchard and Kloppenburg, JJ.

¶ 1. KLOPPENBURG, J. The City of Watertown acquired Timothy Otterstatter's property by eminent domain pursuant to a jurisdictional offer for $270,000, which was $30,000 more than the value reflected in an appraisal that had been arranged by the City and provided to Otterstatter with the City's initial offer of $240,000. Otterstatter filed this action challenging the condemnation pursuant to Wis. Stat. § 32.05(5) (2015–16), alleging that the City failed to follow Wisconsin's eminent domain law.[1] The parties filed cross-motions for summary judgment. While the summary judgment motions were pending, the City also filed an application for a writ of assistance ordering the Sheriff to remove Otterstatter from the property.[2] The circuit court granted the City's summary judgment motion,

---

[1] Wisconsin Stat. § 32.05(5) allows an owner "to contest the right of the condemnor to condemn the property . . . for any reason other than that the amount of compensation offered is inadequate."

All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

[2] *See* Wis. Stat. § 32.05(5), which states, "Nothing in this section shall be construed to . . . prevent the condemnor from

denied Otterstatter's summary judgment motion, and dismissed the complaint. The court subsequently granted the City's application for a writ of assistance.

¶ 2. Otterstatter appeals the circuit court's summary judgment decisions, arguing that the City's jurisdictional offer to purchase the property for $30,000 more than the value established by the City's retained appraiser invalidated the acquisition because the jurisdictional offer was not "based" "upon" a proper appraisal, as required by Wis. Stat. § 32.05(2)(b).[3] Specifically, Otterstatter argues that the jurisdictional offer was invalid for any one of three reasons: (1) the amount of the jurisdictional offer did not equal the appraisal valuation; (2) the jurisdictional offer was not the result of negotiation; or (3) the jurisdictional offer was not the result of a new, more recent appraisal. We reject Otterstatter's argument as contrary to the plain language of the statutes governing the jurisdictional offer process and to the undisputed facts of record.

¶ 3. Otterstatter also appeals the circuit court's issuance of the writ of assistance, arguing that the City did not comply with all jurisdictional requirements as required by Wis. Stat. § 32.05(8).[4] Specifically, Otterstatter argues that the City failed to comply with the jurisdictional requirement of providing a valid ninety-day notice to vacate. Otterstatter argues that the City

proceeding with condemnation during the pendency of the action to contest the right to condemn."

[3] Wisconsin Stat. § 32.05(2)(b) provides in relevant part: "The condemnor shall provide the owner with a full narrative appraisal upon which the jurisdictional offer is based . . . ."

[4] Wisconsin Stat. § 32.05(8) provides in relevant part: "The circuit court shall grant the writ of assistance if all jurisdictional requirements have been complied with . . . ."

was required, but failed, to first acquire title to the property before providing Otterstatter with written notice to vacate the property within ninety days, and, therefore, the notice to vacate was invalid. We reject Otterstatter's argument as contrary to the plain language of the statutes governing the notice to vacate.

¶ 4. Because we reject Otterstatter's challenges to the validity of the jurisdictional offer and the notice to vacate, we affirm.

## BACKGROUND

¶ 5. The following pertinent facts are undisputed. The City[5] decided to acquire Otterstatter's property as part of an airport expansion project. The City obtained an appraisal, conducted in February 2015, which valued Otterstatter's property at $240,000. In August 2015, the City sent Otterstatter a letter attaching the February 2015 appraisal, offering to purchase Otterstatter's property for $240,000, and informing Otterstatter of his right to obtain his own appraisal at the City's expense. A City representative then met with Otterstatter to discuss the City's initial offer, and Otterstatter responded that it was too low.

¶ 6. In September 2015, the following occurred: Otterstatter emailed the City, stating that he had decided not to "consider" the City's initial offer; a representative of the City left Otterstatter a voicemail message and emailed him, asking to discuss his email response to the City's initial offer; and Otterstatter emailed the City stating that the City's initial offer was "an embarrassment."

---

[5] Consistent with Wis. Stat. Rule 809.19(1)(i), we use the parties' names, not their party designations, and we encourage counsel for Otterstatter to do the same in future submissions to this court.

¶ 7. The City then reviewed its initial offer and Otterstatter's responses, and, in December 2015, sent Otterstatter a letter presenting a revised offer to purchase Otterstatter's property for $270,000, stating that the City desired to reach a negotiated settlement, and informing Otterstatter that the City would proceed with condemnation if no agreement was reached by January 22, 2016. The City subsequently attempted to make further contact with Otterstatter, by voicemail and email, to negotiate an agreement, but Otterstatter did not respond.

¶ 8. On March 1, 2016, the City sent Otterstatter its jurisdictional offer, in an amount equaling its revised offer of $270,000. The jurisdictional offer included the statement that, "The purchase price is based upon an appraisal of the Owner's property of which a copy . . . has been provided to the Owner," meaning the February 2015 appraisal. The jurisdictional offer stated that if Otterstatter did not accept the jurisdictional offer within twenty days, the City would proceed with condemnation.

¶ 9. Also on March 1, 2016, the City sent Otterstatter a "90–Day Notice of Intended Vacation Date," informing Otterstatter that the City intended to occupy the property on June 30, 2016, and that he was required to vacate the property before that date. Otterstatter received the notice on March 2, 2016.

¶ 10. On March 9, 2016, Otterstatter filed this action, challenging the City's right to condemn Otterstatter's property based on the City's alleged failure to provide Otterstatter with "any appraisal upon which the Jurisdictional Offer of $270,000 is based, as required by Wis. Stat. § 32.05(2)(b)."

¶ 11. On April 4, 2016, the City served and recorded an award of damages under Wis. Stat.

§ 32.05(7).[6] The City deposited the award proceeds with the Jefferson County Clerk of Circuit Court on that same date. Otterstatter purchased replacement property on April 21, 2016.

¶ 12. In June 2016, both parties moved for summary judgment.

¶ 13. Otterstatter failed to vacate his property on or before June 30, 2016, and, while the summary judgment motions were pending, the City applied for a writ of assistance ordering the Sheriff to remove Otterstatter from the property.

¶ 14. After briefing and oral argument on the parties' motions for summary judgment, the circuit court in a non-final order granted the City's motion for summary judgment, denied Otterstatter's motion for summary judgment, and dismissed the complaint.

¶ 15. After a bench trial on the writ of assistance, the circuit court issued the writ effective September 19, 2016. Otterstatter vacated the property on September 26, 2016.

¶ 16. The circuit court entered a final judgment memorializing its decisions on summary judgment and on the application for a writ of assistance. Otterstatter appeals.

## DISCUSSION

¶ 17. On appeal, Otterstatter challenges the circuit court's decisions on the motions for summary judgment regarding the validity of the jurisdictional

[6] WISCONSIN STAT. § 32.05(7) provides that, if the owner has not accepted the jurisdictional offer within the twenty-day period stated in the jurisdictional offer, "the condemnor may make an award of damages in the manner and sequence of acts" set forth in the statute.

offer and on the application for a writ of assistance regarding the validity of the ninety-day notice to vacate. We address and reject each challenge in turn.

## I. Summary Judgment

¶ 18. Otterstatter appeals the circuit court's summary judgment decisions regarding the validity of the jurisdictional offer, arguing that the City's jurisdictional offer to purchase the property for $270,000, which is $30,000 more than the value reached by the City's retained appraiser, was not "based" "upon" the City's appraisal and therefore the acquisition violated Wisconsin eminent domain law. Specifically, Otterstatter argues that the jurisdictional offer was not "based" "upon" the City's appraisal for any one of three reasons: (1) the amount of the jurisdictional offer did not equal the appraisal valuation; (2) the jurisdictional offer was not the result of negotiation; or (3) the jurisdictional offer was not the result of a new, more recent appraisal. We begin with the standard of review and the applicable law; then we address Otterstatter's arguments and explain why they fail.

## A. Standard of Review

██

¶ 19. We review a circuit court's grant of summary judgment de novo. *Chapman v. B.C. Ziegler and Co.*, 2013 WI App 127, ¶ 2, 351 Wis. 2d 123, 839 N.W.2d 425. Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶ 20. Otterstatter's argument requires that we interpret a statute, which presents a question of law that we also address de novo. *Juneau Cty. v. Associated Bank, N.A.*, 2013 WI App 29, ¶ 15, 346 Wis. 2d 264, 828 N.W.2d 262. The purpose of statutory interpretation is to discern the intent of the legislature. *Id.*, ¶ 16. When we interpret a statute, we begin with the statute's plain language, because we assume that the legislature's intent is expressed in the words it used. *Id.*; *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Kalal*, 271 Wis. 2d 633, ¶ 45. We interpret statutory language in the context in which it is used, in relation to the language of surrounding or closely related statutes, and in a reasonable manner, to avoid absurd or unreasonable results. *Id.*, ¶ 46.

### B. Statutory Condemnation Procedure

¶ 21. This appeal concerns the condemnation of property for an airport, which is governed by the procedures set forth in WIS. STAT. § 32.05. *See* WIS. STAT. § 32.05(intro.) ("All . . . condemnation of property for . . . airports . . . shall proceed as follows."). Relevant here, once the property to be acquired is identified, the condemnor shall arrange for at least one appraisal to be made of that property. WIS. STAT. § 32.05(2)(a). Any additional appraisals can be made at the discretion of the condemnor. WIS. STAT. § 32.05(2)(a). After the condemnor has arranged for an appraisal, "the condemnor shall attempt to negotiate personally with the

705

owner . . . of the property sought to be taken for the purchase of the same." Wis. Stat. § 32.05(2a).

¶ 22. Key to Otterstatter's arguments, where no agreement is reached as a result of negotiations, the condemnor is required to send the owner a jurisdictional offer to purchase the property along with the appraisal *"upon which the jurisdictional offer is based."* Wis. Stat. § 32.05(2)-(3) (emphasis added). The jurisdictional offer must also inform the owner that the appraisal *"upon which the jurisdictional offer is based"* is available for inspection and that the owner may obtain an appraisal at the condemnor's expense. Wis. Stat. § 32.05(2)(b) and 32.05(3)(e) (emphasis added).

¶ 23. If the owner does not accept the jurisdictional offer, the owner may within forty days of service of the offer commence a court action "to contest the right of the condemnor to condemn the property described in the jurisdictional offer, for any reason other than that the amount of compensation offered is inadequate." Wis. Stat. § 32.05(3)(h), (5).

### C. The City's Jurisdictional Offer was "Based" "Upon" its February 2015 Appraisal

¶ 24. As stated, the statute requires that the condemnor provide a jurisdictional offer that is "based" "upon" the appraisal provided by the condemnor to the property owner. Wis. Stat. § 32.05(2)(b). Wisconsin Stat. ch. 32 does not contain a definition of the phrase "based" "upon." Otterstatter asserts that "based" "upon" means "supported by." The relevant dictionary definition of "base" includes "supporting part" and "fundamental ingredient" of. The American Heritage College Dictionary 113 (3d ed. 1993). *See Lemmer v. Schunk*, 2008 WI App 157, ¶ 10, 314 Wis. 2d 483, 760

706

N.W.2d 446 ("We may use a dictionary to establish the common meaning of a word."). In this context, there is no dispute that the meaning of "based" "upon" is that the appraisal must be a supporting part or fundamental ingredient of the jurisdictional offer.

██

¶ 25. We see nothing in the record that undermines the City's position that the February 2015 appraisal was a supporting part or fundamental ingredient of its jurisdictional offer. The record contains the appraisal, the City's initial offer in the same amount as the appraisal, Otterstatter's rejection of the initial offer, the City's communications and attempts to communicate with Otterstatter relating to his rejection of the initial offer, the City's revised offer $30,000 above the initial offer, attempts by the City to communicate with Otterstatter about the revised offer, and the jurisdictional offer in that same, $30,000 higher, amount. Otterstatter does not show, nor can it reasonably be inferred, that the $30,000 increase deviated so substantially from the $240,000 appraisal that the appraisal can no longer be said to be a supporting part or fundamental ingredient of the $270,000 jurisdictional offer.[7] In the next section, we explain why Otterstatter's arguments to the contrary have no merit.

---

[7] Otterstatter makes a "slippery slope" argument, namely, that concluding that the jurisdictional offer was "based" "upon" the appraisal here would mean that a $100,000 jurisdictional offer could be based on a $1,000 appraisal. We are not persuaded. A jurisdictional offer that is $30,000 more than a $240,000 appraisal cannot rationally be compared to an offer that is 100 times greater than the appraisal. While it may be difficult to imagine a circumstance in which an offer that is 100 times greater than an appraisal valuation could be "based" "upon" that valuation, those are not the facts here.

### D. Otterstatter's Arguments why the City's Jurisdictional Offer was not "Based" "Upon" the City's Appraisal

¶ 26. As stated, Otterstatter argues that the City failed to provide a jurisdictional offer that was "based" "upon" the appraisal provided by the City, as required by WIS. STAT. § 32.05(2)(b), because the jurisdictional offer did not equal the appraisal, was not the result of negotiation, or was not the result of a new, more recent appraisal. We reject Otterstatter's argument as contrary to the plain language of the statute and the undisputed facts of record.

### 1. The failure of the jurisdictional offer to equal the appraisal

¶ 27. Otterstatter points to no language in the statute that supports his argument that the jurisdictional offer must equal the appraisal on which the offer is based, and we decline to insert such a matching requirement into the statute. *See State ex rel. United States Fid. & Guar. Co. v. Smith*, 184 Wis. 309, 316, 199 N.W. 954 (1924) ("It is not the function of the court to add language to a statute . . . .").

¶ 28. Moreover, the statutory scheme contemplates exactly the opposite of what Otterstatter advocates. The statute explicitly establishes a process of required opportunity for negotiation in recognition of the "public policy which encourages the settlement of [eminent domain] controversies without resort to litigation." *Connor v. Michigan Wisconsin Pipe Line Co.*, 15 Wis. 2d 614, 624, 113 N.W.2d 121 (1962); *see also* WIS. STAT. § 32.05(2a). Pursuant to that process, the City was not required to stick with its initial offer based on its appraisal, but rather was required to

negotiate to see if that number was too low. Otterstatter points to no language in the statute that would prevent a condemnor, such as the City, from offering more than the appraised amount as part of the effort it is required to make to "attempt to negotiate personally with the owner . . . of the property sought to be taken for the purchase of the same." WIS. STAT. § 32.05(2a). Otterstatter's argument to the contrary defies both common sense and the clear intent of the statutory scheme.

### 2. The asserted failure of the jurisdictional offer to be the result of negotiation

¶ 29. Otterstatter's argument that here "there was absolutely no negotiation" has no basis in the record. As stated above, a condemnor is statutorily required to negotiate personally with the owner before making a jurisdictional offer. WIS. STAT. § 32.05(2a). "Negotiation" means "[a] consensual bargaining process in which the parties attempt to reach agreement" or "[d]ealings conducted between two or more parties for the purpose of reaching an understanding." *Negotiation,* BLACK'S LAW DICTIONARY (10th ed. 2014). In this case, the City "met with Mr. Otterstatter and his wife . . . to discuss the offer package." Mr. Otterstatter said that the offer was too low and told the City he would not consider the $240,000 offer. In response, the City "considered Mr. Otterstatter's comments and decided to increase the offer by $30,000." These actions by both the City and Otterstatter fall squarely within the definition of negotiation, because they are attempts to come to an understanding or agreement on the price of the property. That Otterstatter appeared to express little interest in active negotiation and that these attempts ultimately failed to result in a settle-

ment do not mean that negotiation did not occur, nor that the negotiation did not result in a valid jurisdictional offer from the City.

¶ 30. Otterstatter suggests that the City's negotiation efforts do not satisfy the statutory negotiation requirement because the record indicates that those efforts, in which the City "increased its offer" in response to Otterstatter's rejection of the City's lower initial offer and then issued its jurisdictional offer at that higher amount, must have been undertaken with a motive to "minimize [Otterstatter's] chances" of later recovering litigation expenses and attorney's fees in an action challenging the amount in the jurisdictional offer under WIS. STAT. § 32.28.[8] However, assuming without deciding that his premise is correct, Otterstatter does not explain why submitting a jurisdictional offer that seeks to avoid litigation expenses is an improper aspect of the required negotiation process.

¶ 31. Otterstatter cites *Standard Theatres, Inc. v. DOT*, 118 Wis. 2d 730, 745, 349 N.W.2d 661 (1984), in which our supreme court stated that the dual purpose of the fee-shifting provision in WIS. STAT. § 32.28 is "to discourage low jurisdictional offers and to make the condemnee whole when the condemnee is forced to litigate in order to get the full value of the property." But here the condemnee, Otterstatter, was not "forced to litigate in order to get the full value of the property." He has not initiated any litigation related to the amount of compensation, and therefore the fee-shifting provisions do not apply. Moreover, the City here issued its jurisdictional offer in the course of

---

[8] WISCONSIN STAT. § 32.28 provides that, at a just compensation trial, an owner-plaintiff who obtains at least $700 and at least 15% more than the amount of the jurisdictional offer will be reimbursed for litigation expenses including attorney's fees.

statutorily required negotiations, and Otterstatter does not develop any argument that in doing so the City failed to follow the law governing the jurisdictional offer process.

¶ 32. Otterstatter also suggests that the City's negotiation efforts do not satisfy the statutory negotiation requirement because the City's higher revised offer was not made in response to a counteroffer by Otterstatter. However, Otterstatter develops no coherent argument that the City's making the higher revised offer, in response to Otterstatter's rejection of the City's initial offer, was not a valid step in the statutory negotiation process, as discussed above.

*3. The failure of the jurisdictional offer to be "based" "upon" a new, more recent appraisal*

¶ 33. Otterstatter argues that the February 2015 appraisal was "too old" to support the March 2016 jurisdictional offer. Otterstatter's argument suffers from at least three defects: (1) the argument appears to have no basis in pertinent statutory language; (2) Otterstatter relies solely on a case that is wholly inapposite; and (3) Otterstatter's erroneous reliance on the inapposite case suggests that he is, in effect, making an improper challenge to the amount of compensation, which would be a challenge that cannot be made in this action.

¶ 34. First, Otterstatter fails to point to any statutory provision suggesting that an appraisal cannot serve as the basis for a jurisdictional offer because it is too old, and again it is not our role to insert terms into statutory provisions. *See Smith*, 184 Wis. at 316 ("It is not the function of the court to add language to a statute . . . .").

¶ 35. Second, Otterstatter relies on *Schey Enterprises, Inc. v. State*, 52 Wis. 2d 361, 190 N.W.2d 149 (1971), which involved a claim under WIS. STAT. § 32.09. Section 32.09 sets forth the rules to be followed when a property owner challenges the amount of compensation in a just compensation trial *after* an award of damages has been recorded. *Schey*, 52 Wis. 2d at 366. In *Schey*, our supreme court ruled that an appraisal offered to support the amount of compensation at such a trial must be conducted on the day of taking. *Id.* at 368–69. However, *Schey* is inapposite because the provisions set forth in §§ 32.05(9) and 32.09, which govern activity *after* an award of damages, do not apply to jurisdictional offers, which *precede* the award of damages. WIS. STAT. § 32.05(7). The issue in *Schey*, 52 Wis. 2d at 363—the admissibility of an appraisal in a jury trial to determine compensation under § 32.09(1)—is not relevant to the issue here—whether the City made a jurisdictional offer that was "based" "upon" an appraisal under § 32.05(2)(b).

¶ 36. Third, Otterstatter's erroneous reliance on *Schey*, in which the owner was contesting the amount of compensation, suggests that Otterstatter is also, at bottom, contesting the amount of compensation here. That is, Otterstatter's real claim is not that the City violated any requirement in WIS. STAT. § 32.05, but that the ultimate award is too low. However, as just stated above, such a claim is not a challenge to the right of the party to condemn under § 32.05(5), but is directed to defects in the procedure for determining just compensation under WIS. STAT. § 32.09. To the extent that Otterstatter's argument is directed at the amount of compensation, it fails because it is not relevant to this action, which challenges the right of the condemnor to condemn the property described in the jurisdictional offer under § 32.05(5).

¶ 37. Finally on this topic, Otterstatter makes a "slippery slope" argument, namely, that a ruling in favor of the City means that condemnors may, without limitation, condemn property based on outdated appraisals. We are not persuaded. The statute itself guards against such an outcome, by providing that property owners may obtain their own appraisals at the condemnor's expense and by requiring condemnors to personally negotiate with property owners. WIS. STAT. § 32.05(2)-(2a). An owner may also appeal the amount of compensation upon recording of the award of damages. WIS. STAT. § 32.05(9)-(11). It is only in such an appeal, under *Schey*, that the appraisal must reflect the value of the property on the day of taking. 52 Wis. 2d at 369–70.

## II. Writ of Assistance

¶ 38. Otterstatter argues that the circuit court erred in issuing the writ of assistance because the City did not comply with all jurisdictional requirements, as required by WIS. STAT. § 32.05(8). Specifically, Otterstatter argues that the City failed to comply with the jurisdictional requirement of providing a valid ninety-day notice to vacate. Otterstatter argues that the City was required to but did not first acquire title to the property before providing Otterstatter with written notice to vacate the property within ninety days and, therefore, the notice to vacate was invalid.[9] We address and reject Otterstatter's challenge to the validity of the ninety-day notice to vacate as follows.[10]

---

[9] Otterstatter also argues that the circuit court erred in issuing the writ of assistance because the City's jurisdictional offer was not "based" "upon" an appraisal under WIS. STAT. § 32.05(2). We have already rejected this argument in section I. above and so do not reiterate our analysis here.

[10] The City argues that Otterstatter's challenge to the validity of the ninety-day notice to vacate is moot. We assume,

## A. *Standard of Review*

¶ 39. The issue of whether the ninety-day notice preceding the writ of assistance was invalid because the City did not first acquire title to the property before providing the notice, was addressed by the circuit court on summary judgment and involves the interpretation and application of a statute to undisputed facts. Accordingly, we review that issue de novo, as set forth in section I. above.

## B. *Relevant Statutory Provisions*

¶ 40. Two statutory provisions are relevant to Otterstatter's argument. The first, WIS. STAT. § 32.05(7), defines when title vests in the condemnor. The second, WIS. STAT. § 32.05(8), provides the procedure by which the condemnor shall take possession of the property. We now set forth the pertinent parts of each provision.

¶ 41. WISCONSIN STAT. § 32.05(7) ties the vesting of title of the property in the condemnor to the recording of the award of compensation, also referred to as the award of damages. When a property owner does not accept a jurisdictional offer, the condemnor may make an award of damages as set forth in § 32.05(7)(a) and

without deciding, that the City's position on mootness is incorrect. Even if the City were correct, we proceed to address the issue as urged by both the circuit court here and Otterstatter, because Wisconsin courts have not yet interpreted the ninety-day notice provision in WIS. STAT. § 32.05(8)(b) and direction from this court on an issue affecting the "extraordinary" exercise of eminent domain, *The Warehouse II, LLC v. DOT*, 2006 WI 62, ¶ 32, 291 Wis. 2d 80, 715 N.W.2d 213 (quoted source omitted), is of great public importance and a decision is necessary to guide the circuit courts. *See State ex rel. Olson v. Litscher,* 2000 WI App 61, ¶ 3, 233 Wis. 2d 685, 608 N.W.2d 425.

(b). The award of damages is a document that specifies the date on which the condemnor will acquire the property and the amount of compensation to be paid to the owner, "which shall be an amount at least equal to the amount of the jurisdictional offer." WIS. STAT. § 32.05(7)(a). The award of damages is then recorded, and "*title in fee simple to the property described in the award . . . shall vest in the condemnor as of the time of recording.*" WIS. STAT. § 32.05(7)(c) (emphasis added).

¶ 42. WISCONSIN STAT. § 32.05(8) addresses the procedure by which the condemnor shall take possession of the property. Under § 32.05(8)(b), a condemnor must provide *ninety days' written notice of the intended vacation date,* which is the date when the condemnor has the right to possession of the property. If the owner has not vacated the property by that date, the condemnor may ask the circuit court to issue a writ of assistance requiring the owner to vacate the property. "The circuit court shall grant the writ of assistance *if all jurisdictional requirements have been complied with* . . . ."[11] WIS. STAT. § 32.05(8)(b) (emphasis added); *see also City of Janesville v. CC Midwest, Inc.*, 2007 WI 93, ¶ 23, 302 Wis. 2d 599, 734 N.W.2d 428 (compliance with all jurisdictional requirements is a condition precedent to an issuance of a writ of assistance under WIS. STAT. § 32.05(8)(b)).

*C. Validity of Ninety-Day Notice to Vacate*

¶ 43. Otterstatter argues that the City's ninety-day notice was not valid because the City had not

---

[11] The statute imposes additional prerequisites before a circuit court may issue a writ of assistance, but Otterstatter does not argue that those additional prerequisites were not met.

acquired title to Otterstatter's property before it provided that notice. We conclude that the plain language of the statute defeats Otterstatter's argument.

¶ 44. Wisconsin Stat. § 32.05(8) states, "No person occupying real property may be required to move from a dwelling or move his or her business or farm without at least 90 days' written notice of the intended vacation date from the condemnor." We agree with the City that the language in Wis. Stat. § 32.05(8)(b) is unambiguous. The statute states when written notice to vacate must be provided: "at least 90 days[]" before "the intended vacation date." This language plainly requires ninety days' written notice before an occupant may be required to move. There is no language in the statute indicating that the ninety-day notice must be provided after the condemnor has acquired title to the property, as Otterstatter argues. We will not read into the statute a requirement that the ninety-day notice must be provided only after the condemnor acquires the property when the legislature has itself not included such a requirement. *See State v. Briggs*, 214 Wis. 2d 281, 288, 571 N.W.2d 881 (Ct. App. 1997) (declining to expand the meaning of a statute "to the point that we engage in rewriting the statute, not merely interpreting it," and noting that "[t]he role of the legislature is to write the law"); *City of Racine v. Bassinger*, 163 Wis. 2d 1029, 1037–38, 473 N.W.2d 526 (Ct. App. 1991) ("engrafting onto the statute [governing condemnation action procedures] things it does not require is forbidden").

¶ 45. Otterstatter's arguments on this issue all disregard the plain language of the statute noted above. Nevertheless, for the sake of completeness, we will briefly address each of them.

¶ 46. Otterstatter points out that the definition of condemnor in Wis. Stat. § 32.05(8) is an entity "which acquires property," and argues that this means that a condemnor is not an entity seeking to acquire property. Therefore, his argument proceeds, the condemnor must have already acquired the property before it can provide the ninety-day notice to vacate.[12] However, this interpretation would upend the entire statutory condemnation scheme, which outlines a series of steps that a "condemnor" must take to initiate and then to implement the process of condemnation, long before the "condemnor" takes title to the property. *See, e.g.,* Wis. Stat. § 32.05(2) (requiring that the condemnor prepare an appraisal of the property "proposed to be acquired"); 32.05(2a) (requiring the condemnor to attempt to negotiate before making the jurisdictional offer); 32.05(3) (requiring the condemnor to send a jurisdictional offer to the owner of the property "sought to be condemned" and "sought to be taken"); 32.05(7) (authorizing the condemnor to make an award of damages that states "the date when actual occupancy of the property condemned will be taken by condemnor"); 32.19(2m) (requiring a condemnor to provide certain information before negotiations).

¶ 47. If a condemnor can only be an entity that has already acquired title to a property, then none of these other provisions make sense. We must construe statutory language to avoid such an absurd result. *See Kalal*, 271 Wis. 2d 633, ¶ 46 (we interpret statutory language in the context in which it is used, in relation

---

[12] WISCONSIN STAT. § 32.185 defines "condemnor" as "any municipality . . . vested with the power of eminent domain which *acquires* property for public purposes . . . by negotiated purchase when authorized by statute to employ its powers of eminent domain." (Emphasis added.)

to the language of surrounding or closely related statutes, and in a reasonable manner, to avoid absurd or unreasonable results); *Belding v. Demoulin*, 2014 WI 8, ¶ 17, 352 Wis. 2d 359, 843 N.W.2d 373 (statutory provisions that address the same matter should be addressed in harmony such that each has force and effect).

¶ 48. Otterstatter argues that his interpretation is supported by the use of the past tense in Wis. Admin. Code § ADM 92.06(6)(b) ("An agency may not require an occupant of property *acquired* by an agency to move without at least a 90 day written notice of an intended vacation date." (emphasis added)). However, this use of verb tense in this rule, even if it had the meaning to which Otterstatter tries to assign it, could not matter. *See Milwaukee Transp. Services, Inc. v. DWD*, 2001 WI App 40, ¶ 9, 241 Wis. 2d 336, 624 N.W.2d 895 ("If a regulation conflicts with a statute, the statute governs. We should, if at all possible, construe regulations to harmonize them with any applicable statute." (citations omitted)).

¶ 49. Otterstatter cites inapposite case law in support of his interpretation that title acquisition must occur before the ninety-day notice is sent. The first case he cites, *Bassinger*, addressed the meaning of the term "occupants" in Wis. Stat. § 32.05(8), in order to determine whether the condemnor was required to make available a comparable replacement property before issuing a writ of assistance; the court did not address whether the ninety-day notice must follow title acquisition. 163 Wis. 2d at 1039.[13] In the second case, *CC Midwest*, the court addressed whether the

[13] Otterstatter also refers to the legislative history recited in *Bassinger*, 163 Wis. 2d at 1039–40, but we need not consult legislative history where, as here, the statutory language is unambiguous. *See Kalal*, 271 Wis. 2d 633, ¶ 51 ("as a general

City had made comparable replacement properties available; the ninety-day notice issue was not litigated in that case. 302 Wis. 2d 599, ¶ 1. Nevertheless, it is worth noting that in that case the City provided the ninety-day notice before the City acquired the property. *Id.*, ¶¶ 3, 5. The remaining cases cited by Otterstatter (including an unpublished opinion that may not be cited under WIS. STAT. RULE 809.23(3)) involve landlord-tenant and lien laws, and we consider them irrelevant.

¶ 50. Otterstatter argues that common sense supports his interpretation, because a condemnor cannot provide notice to vacate a property that it does not own. However, Otterstatter does not explain how our plain language interpretation of the statute defies common sense. His description of absurd situations that might flow from the rejection of his interpretation ignores the statutory backstop that, regardless of when a condemnor provides the ninety-day notice, the condemnor may not apply for a writ of assistance to require an owner to vacate until after the condemnor has acquired title.

¶ 51. Otterstatter argues that we must construe the ninety-day notice requirement in his favor, citing *Warehouse II*, 291 Wis. 2d 80, ¶ 32 (stating, in reviewing an ambiguous term in the fee-shifting statute, that we "liberally construe statutory provisions *regarding compensation* for eminent domain takings to favor the property owner whose property is taken" (emphasis added)). But, unlike the fee-shifting provision at issue in that case, the ninety-day notice provision at issue here is not ambiguous; nor is it a provision regarding

matter, legislative history need not be and is not consulted except to resolve an ambiguity in the statutory language").

719

compensation. *See id.,* ¶¶ 19–20 (fee-shifting provision ambiguous), ¶ 32 (provisions regarding compensation).

¶ 52. Otterstatter also asserts that even if the notice was valid, the City failed to provide the requisite notice of ninety days. However, Otterstatter does not develop any argument based on this assertion, and the record does not support his contention. The record establishes that Otterstatter continued to occupy the property for approximately 209 days after he first received notice of the vacation date, and 176 days after the City took title to the property.

## CONCLUSION

¶ 53. For the reasons stated, we affirm the circuit court's judgment dismissing Otterstatter's complaint on summary judgment and issuing the writ of assistance.

*By the Court.*—Judgment affirmed.